## FRANCES E. PAYNE, Respondent, v. WILLIAM WILSON, Impleaded, etc., Appellant.

An equitable mortgage may be constituted by any writing from which the intention to mortgage may be gathered; and an attempt to make a legal mortgage, which fails for the want of some solemnity, is valid in equity.

Where an equitable lien has once arisen and there is no express waiver, it is not waived by the subsequent taking of a legal and perfected lien to the same extent and upon the same property, nor is it merged therein.

Where the owner of an equitable title subsequently acquires a legal one, but has an interest in keeping the two titles distinct, as where there is an intervening incumbrancer, he has a right so to do, and the equitable title will not be merged.

One entitled to a mechanic's lien, until he files his notice, has no greater equities than other general creditors, and is affected by all equities existing at that time in favor of those dealing with his debtor; his lien attaches only to the estate and interest of the debtor as it then exists. His lien is therefore subject to a prior equitable lien although he had no notice of it.

H. agreed in writing with defendant P., who was the owner of certain lands, and with D. who had a contract for the purchase thereof, to furnish materials for the erection of buildings thereon, they agreeing to give him, for one-half the amount, a mortgage on one of the houses. H. furnished the materials, and on May 1, 1872, in pursuance of the agreement, P. delivered to him a mortgage, signed, but not acknowledged or attested. The mortgage was acknowledged June 24th, and was recorded August 9th. On September 21st, because of some question as to usury in the first mortgage, a second was executed by P. which was assigned to plaintiff. On June 19th defendant W. filed a mechanic's lien against all the houses and lots. In an action to foreclose the mortgage, *held*, that plaintiff had a prior lien to that of W ; that the fact that the original agreement did not point out the particular premises to be mortgaged did not impair its effect as an equitable mortgage, at least as against W., who could not be affected by the application of the lien to any one of the houses and lots, his lien being upon all; also, that the first mortgage, although void as against a purchaser or incumbrancer when delivered, because not executed in conformity to the statute (1 R. S., 738, § 137) was valid in equity, and as it specified the premises intended to be mortgaged it gave an equitable lien thereon prior to the lien of W.; that the equitable lien was not waived by the taking of the second mortgage nor was it merged therein; that the equitable lien, although not expressly assigned, passed to plaintiff by the assignment of the debt.

(Argued June 14, 1878; decided September 17, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment in favor of plaintiff, entered upon the report of a referee. (Reported below, 11 Hun, 302.)

This action was brought for the forecloseure of a mortgage.

In September, 1871, the defendant Palmer, who was the owner of certain premises which he had contracted in writing to sell to one Doran and to advance moneys to erect buildings thereon, and the said Doran, agreed with Charles Halstead, in consideration that said Halstead would furnish $8,000 in building materials, to pay half cash and half "in a first mortgage on one of the thirteen houses now being erected by the said Doran." The materials were furnished, the houses were built, and on or about the 1st of May, 1872, Palmer, who owned the fee of the land, delivered to Halstead his bond secured by a mortgage for $4,240, being for said half payment, with six per cent added to the cash value of said materials, as called for by the agreement. This mortgage was not acknowledged or attested by a subscribing witness.

On the 19th of June, 1872, William Wilson, one of the defendants, filed a notice claiming a lien on all the houses and lots, under chapter 478, Laws of 1862. On the 24th of June, 1872, Halstead procured Palmer and wife to acknowledge the mortgage, and recorded it on the 9th of August, 1872, in Kings county. On the 21st of September, 1872, Halstead, fearing that the six per cent added to the cash value of the goods might be held usurious, applied to Palmer to give a new mortgage omitting the six per cent, and a new bond and mortgage was executed and delivered on that day. This bond and mortgage was assigned to plaintiff.

*Theo. F. Jackson*, for appellant. It is essential to an equitable lien on personal property that the subject-matter be identified. (*Grinnell* v. *Suydam*, 3 Sandf., 132; *Dwight* v. *Newell*, 3 N. Y., 187.) The lien of a vendor for purchase

money is waived whenever any security is taken for the debt. (Thomas on Mortgages, 31; *Vail* v. *Foster*, 4 N. Y., 313.) The first mortgage from Palmer to Halstead was ineffectual against a purchaser or incumbrancer until acknowledged or attested by a subscribing witness. (1 R. S., 738, §§ 137, 142, 147.) The lien of an equitable mortgage is only entitled to priority over the general lien of a judgment. (*Belmont* v. *Smith*, 1 Duer, 678; *Stuyvesant* v. *Browning*, 1. J. & S., 203.) A defective mortgage when reformed cannot affect a valid lien acquired between its date and reformation. (*Van Thorniley* v. *Peters*, 26 Ohio St., 471.)

*James Taylor*, for respondent. The contract between the owner of the mortgaged premises and Halstead and Doran was an equitable mortgage and a specific lien, and had, as such, priority over subsequent judgments against the owner. (*Matter of Howe*, 1 Paige R., 125, 128, 129, 130; *Dwight* v. *Newell*, 3 N. Y., 185, 187; *Cook* v. *Craft*, 3 Lan., 516; *Racouiller* v. *Lausvain*, 32 Cal., 375; *Robinson* v. *Williams*, 22 N. Y., 387; *De Pierre* v. *Thorn*, 4 Bos. Sup. Ct. R., 266; 2 Story's Eq., 718, 719, § 1503; *Matter of Howe*, 1 Paige Ch. R., 125; *Dwight* v. *Newell*, 3 N. Y., 185–187.) The equitable mortgage having been created prior to the filing of defendant's mechanic's lien had priority over it. (*Cox* v. *Brodrick*, 4 E. D. Smith, 721; *Sinclair* v. *Fitch*, 3 id., 677; *Noyes* v. *Burton*, 29 Barb., 630; *Quimby* v. *Sloan*, 2 E. D. Smith, 594, 616; *Cronk* v. *Whitaker*, 1 id., 647; *Lebretter* v. *Koffman*, id., 664; *Chamberlain* v. *O'Connor*, id., 665; *Keupler* v. *O'Connor*, id., 672; *Mrs. Aubrey* v. *Mildun*, 1 Daly, 396; *Bailey* v. *Johnson*, id., 61; *Ems* v. *Reed*, 49 Barb., 367.) The equitable lien, under the agreement to give a mortgage, was not merged in the first or second mortgage, neither was the first merged in the second mortgage. (*Butler* v. *Miller*, 1 Com., 496., per COMSTOCK, J.; *Gregory* v. *Thomas*, 20 Wend., 17–20; *Phelps* v. *Johnson*, 8 J. R., 58; *James* v. *Morey*, 2 Cow., 285, 313; *Van Nest* v. *Latson*, 19 Barb., 604; *Russell* v. *Austin*, 1 Paige, 192; *Schemerhorn*

v. *Merrill,* 1 Bar., 511; *Spencer* v. *Harford,* 4 Wend., 381; *Cooper* v. *Whitney,* 3 Hill, 95; *Clifton* v. *White,* 15 Bar., 90; *Barnes* v. *Canack,* 1 id., 392; *Hyde* v. *Tanner,* id., 76; *Highway* v. *Pendleton,* 15 Ohio, 735; *Grimes* v. *Kimball,* 3 Allen, 518; *Sherwood* v. *Elslow,* 5 Ind., 218; 4 Kent, 114–117; 6 Johns. Ch. R., 393; *Forbes* v. *Moffat,* 18 Ves., 384; *Champlin* v. *Layton,* 1 Ed. Ch. R., 473–476; *Hunt* v. *Rousmaniere,* 1 Peters R., 1; *Barnes* v. *Mott,* 64 N. Y., 398; *Runyar* v. *Stewart,* 12 Barb., 537; *Bingham* v. *Bingham,* 1 Ves. Sen., 128; *Stapleton* v. *Scott,* 13 Ves., 425; *Willan* v. *Willan,* 16 id., 72; Story's Eq., 112, § 122; *Crosier* v. *Acer,* 7 Paige, 137, 143; Story's Eq., 133, 138.)

Folger, J. It is not necessary for us to consider all the questions made on both sides in this case. We have put our judgment on the grounds stated in the following paragraphs.

It is contended that though the mortgage to Halstead be void, it is the result of a prior existing agreement before that resting in parol, and which constituted an equitable mortgage. The facts on which this contention rests are these : Palmer was the owner of the lands ; he agreed in writing to sell to Doran, and to advance moneys for the putting up of buildings ; Halstead, the subsequent mortgagee, agreed with them in writing to furnish materials for the buildings to the amount of $8,000 ; and they agreed to give him for one-half the amount a mortgage on some one of the houses, specifying the terms of the mortgage ; he did furnish materials, pursuant to the agreement, to that amount ; and also in pursuance of it Palmer did make and deliver to Halstead the written mortgage.

An equitable mortgage may be constituted by any writing from which the intention so to do may be gathered, and an attempt to make a legal mortgage, which fails for the want of some solemnity, is valid in equity ; (Miller on Eq. Mortgages, 1, 2) ; and it has been held, that an agreement for a mortgage, is, in equity, a specific lien upon the land ; (*In re Howe,* 1 Paige, 125; *Chase* v. *Peck,* 21 N. Y., 581;)

and that an equitable mortgage thus created, is entitled to a preference over subsequent judgment creditors; (1 Paige, *supra ; Robinson* v. *Williams,* 22 N. Y., 386). Though it has been held, that, save in exceptional cases, such as accident, fraud or mistake, the agreement must be in writing, the case in hand is not affected by that ruling.

These principles are not questioned by the appellant ; but it is urged that facts exist, which prevent the operation of them to the benefit of Halstead. We have noticed that the agreement of Palmer, Doran and Halstead, was not for a mortgage on the whole premises, nor for any part of it with specific indication of that part. It was for a mortgage on one of the houses then going up, but without pointing out the particular house. Such a designation of the property to be charged, though indefinite to some degree, does not impair the effect of the equitable mortgage; (*Sir Simeon Stewart's Case,* cited 2 Schoale & Lefroy, 381; and 3 Vesey, 576). Doubtless, there must be an identification of the property, so that the equitable mortgagee may say, with a reasonable degree of certainty, what it is that is subject to his lien. In this case, it was certain that one building and its lot, out of a number, were the subject of the equitable lien. As the lien of the appellant is upon all of the premises, he cannot be injuriously affected by the application of the equitable lien to any one of that number. Besides that, before he acquired his lien, Palmer and Doran had specified, to Halstead's acceptation, the one of the houses which should be the subject of the mortgage to him. So that we consider, that in this case, without anything further, the designation of the property to be charged with the intended legal mortgage, was sufficient. Besides that, however, we have seen that an attempt to make a legal mortgage, which fails for the want of some solemnity, is valid in equity. The instrument which we have assumed to be void, as in conflict with the one hundred and thirty-seventh section, was such an attempt. But it did specify by metes and bounds and particular description, the one lot which it was meant to subject to the

payment of the money to Halstead, in accordance with the agreement. This instrument was prior in creation to the mechanic's lien, and, under the rule we have recited, had or continued an equitable priority to it.

But it is further contended, that the equitable lien thus arising, was waived by the further action of the parties to it. The facts on which this contention rests are these : After the execution of the agreement, as above stated, and after the signing and delivery of the mortgage unacknowledged and unattested, the mortgagors duly acknowledged the execution of the mortgage, a proper certificate thereof was indorsed upon the mortgage by the acknowledging officer, and the mortgage was duly recorded. There thus became a perfected mortgage, a specific lien upon the premises described in it, a lien resting upon the express legal instrument thus made. It is a rule, that where a vendor of land might have an equitable lien for the purchase-money, yet takes a security upon the land sold for the whole or a part of that money, the equitable lien is waived, unless there is an express agreement that it be kept alive ; (*Fish* v. *Howland*, 1 Paige, 20). I understand the effect of this rule to be this : That if the vendor of lands chooses to convey, and to take back no security upon them or other lands, nor any security independent of the personal liability of the vendee to respond for the consideration-money, he may rely upon an implied lien which equity gives him upon the lands conveyed, subject to some infirmities which such a lien suffers. But if he takes such security as is just above indicated, he thereby waives that implied lien, that equitable lien, upon the lands. This rule does not go to the extent, that if an equitable lien has once arisen, the subsequent taking of a legal and perfected lien, to the same extent and upon the same property, extinguishes it, by waiver or merger : (*Stafford* v. *Van Rensselaer*, 9 Cow., 316). The equitable lien has had, in the case in hand, an existence. There has been no express waiver of it. The law is not anxious to imply a waiver. Whether it has ceased to exist, depends upon the rules of

equity, which determine whether a merger has taken place. It is a general rule, that where an equitable and legal estate meet and vest in the same ownership, the former is merged in the latter. But the doctrine of merger, as applied to mortgages, is founded upon equitable principles, and is only applied where equity requires that it should be. Where the owner of the legal and equitable titles has an interest in keeping those titles distinct, as where there is an intervening incumbrance, he has a right so to keep them, and the equitable title will not be merged and thereby extinguished; (*Millspaugh* v. *McBride*, 7 Paige, 509; *McKinstry* v. *Merwin*, 3 J. C. R., 466). So that, even if we should treat the right obtained by the mortgage after its due acknowledgment and recording, as a legal one, the equitable lien would not have been extinguished thereby. Still less so, when we consider that both are liens of the same character, both equitable in their nature, one implied, the other express. The contention of the appellant, confounds with the waiver of a right to an implied lien, which the vendor of real estate gives up when he takes certain express security, that merger which is sometimes brought about, when an estate lesser in degree is united with one higher. There was no waiver here, nor was there a merger.

These views apply as well to the second written mortgage, which was executed under the supposition that the first was tainted with usury.

It is also contended, that the plaintiff may not have the benefit of the equitable lien of Halstead, for the reason that she is not the express assignee of it. It does not appear from the record, what are the contents of the several assignments from Halstead and others, by which the plaintiff gets her title to the subject-matter of the action. But even if the equitable lien were not named in the instrument of assignment, it would pass thereby. The debt was assigned by an express assignment of the bond, and the collateral security of the mortgage was assigned, in express terms. But that security would have passed, if not named; for an assign-

ment of the debt transfers the interest of the owner of it in the land mortgaged, as an incident to the debt; (*Green* v. *Hart*, 1 J. R., 580; *Pattison* v. *Hull*, 9 Cow., 747). So did pass all the rights of Halstead in the equitable lien, which also was an incident to the debt.

It is further claimed, that though an equitable lienor may have priority over a judgment creditor, the right thereto rests upon considerations peculiar to the case of such a creditor, and which are not found in that of a mechanic's lienor. Those considerations are said to be, that the lien of a judgment-creditor is not specific but general, and that the debt arises not on the security of the land, but upon the general credit of the debtor and his whole estate; (*Hurst* v. *Hurst*, 2 Wash. C. C. R., 69–78); while the mechanic's lien is specific upon the particular land, for the improvement of which the materials or labor were furnished, and the credit is given to that land alone. We do not agree that there exists this distinction. The claim of the two creditors arises in much the same way. Credit is, in both cases, given to the debtor, which is based upon a reliance upon his whole estate, and upon the provisions of law which provide for a collection of the debt. In the one case, a lien upon real estate is acquired more speedily, and is specific when obtained. In the other, the lien is general, but it binds as much the specific real estate. In both cases, there exists the distinction from a *bona fide* purchaser or a *bona fide* mortgagee; one who without notice of the equitable lien, makes a present purchase and pays the consideration money, or one who makes a present loan and parts with his money, relying upon the title to the land being unincumbered, and upon that alone. It is this distinction which makes ineffectual an equitable lien, though prior in date, against such purchaser or mortgagee, and which makes it effectual against a judgment-creditor; (*Stafford* v. *Van Rensselaer*, 9 Cow., 316). And we see no reason why it should not be the same with a mechanic's lienor. He has no specific lien until he files his notice, and until then he is liable to be forestalled by those who have

acquired general or specific liens. As he does not, as a necessary fact, give credit to the specific real estate alone, when he begins to supply his materials or labor, he is affected by the prior equitable lien, though he have no notice of it. He acquires a specific lien when he files his notice, but up to that time he is a general creditor, with no greater equities than other general creditors. Hence he is affected by all equities existing in favor of those dealing with his debtor; and when he acquires his specific lien against the debtor, it attaches to no more than the estate and interest of the debtor as it then exists, which is no more than is left to the debtor after the satisfaction of those equities.

For these reasons, we are of the opinion that the judgment should be affirmed.

All concur, except MILLER and EARL, JJ., absent.

Judgment affirmed.