S. AUGUSTA MUNDY, RESPONDENT, *v.* ISAAC MUNSON AND RICHARD H. HUNTINGTON, AS ADMINISTRATORS, ETC., AND OTHERS, APPELLANTS.

*Equitable lien upon the property of the grantor of an annuity — as against his creditors, the property upon which it is given must be described with certainty.*

The plaintiff, the widow of one Pearson Mundy, brought this action to enforce an alleged equitable lien which she claimed to have acquired upon the real and personal property of the deceased under an ante-nuptial agreement entered into between the parties. By the ante-nuptial agreement Pearson agreed that he would by grant or by bequest devise or otherwise provide for and assure unto the plain-tiff, in case she should survive him, an annuity of $1,200, from and after his decease, for and during her natural life. The agreement further provides that the said party of the first part, Pearson, " does hereby promise, covenant and agree, that the same shall be, and *the same is hereby made and constitutes a lien and*

*charge upon all the property and estate, real and personal, of every name and nature, kind and description, which he may own and to which he may be entitled at the time of his decease."*

The plaintiff agreed to accept the annuity in lieu of her dower, and of any distributive share in his estate, and to join in the conveyance of any real estate during his life, and after his death to release her claim to dower, or to a distributive share, to his heirs-at-law, next of kin, etc., upon the annuity being sufficiently secured. The estate of the deceased was not sufficient to discharge his debts.

*Held,* that the agreement did not give to the plaintiff any equitable lien, as against the creditors of Pearson, upon the property which he owned at the time of making the agreement, or at the time of his death, for the reason that it failed to designate, with the certainty which the law requires, the property to be charged therewith.

APPEAL from a judgment of the Jefferson Special Term, adjudging a certain ante-nuptial agreement to be an equitable mortgage on all the real and personal property of which Pearson Mundy, defendants' intestate, died seized, and directing a foreclosure and sale.

The contract upon which the suit was brought by the widow of the intestate contained, among others, the following provisions: "Now, therefore, the said party of the first part does hereby promise, covenant and agree, that immediately after the consummation of such intended marriage he will, by grant or by bequest, devise or otherwise provide for and assure unto the said party of the second party, in case she shall him survive, the payment of an annuity of $1,200 from and after the decease of the said party of the first part for and during the natural life of the said party of the second part, to be paid semi-annually.; that is to say, the sum of $600 at the end of each and every six months from and after the decease of the said party of the first part, during the life of the said party of the second part, and for the payment of said annuity the said party of the first part does hereby promise, covenant and agree, that the same shall be, and the same is hereby made and constitutes a lien and charge upon all the property and estate, real and personal of every name and nature, kind and description which he may own and to which he may be entitled at the time of his decease.

In consideration thereof, the said party of the second part hereby promises, covenants and agrees, that she will and hereby does accept

of such annuity, to be secured and paid to her as above provided, in lieu of all dower and dower interest in the estate of the said party of the first part, and in lieu of any, all and every distributive share and shares to which she might otherwise by law be entitled. And the said party of the second part, in consideration aforesaid, does hereby further promise, covenant and agree that at any and all times on request of the said party of the first part, she will join with him in the conveyance of any and all real estate he may desire to convey during his life, and to duly execute and acknowledge all such conveyances as required by law, and that after the decease of the said party of the first part, and in case the said party of the second part shall him survive, and in case the payment of the annuity as above provided shall be sufficiently secured, that she, the said party of the second part, on request of the heirs-at-law, next of kin, legatees and devisees of said party of the first part, will duly release all dower and right of dower of, in and to the estate of the said party of the first part and all and every distributive share to which she might otherwise be entitled."

*Watson M. Rogers*, for the appellants, Munson and Huntington.

*Dorwin & Brown*, for the appellant, Norris W. Mundy, trustee, etc.

*George S. Hooker*, for the respondent.

BOARDMAN, J.:

Two questions are presented by the opinion of the learned justice at Special Term, which go to the plaintiff's right of recovery to the extent and in the manner provided for in the judgment appealed from. It is conceded that the plaintiff has a valid cause of action against the estate of the deceased under the ante-nuptial contract, but it is denied that she has any equitable lien, and her claim to priority of payment over the general creditors of the estate is also denied. When the contract was made in 1873, the defendant's intestate was in independent circumstances, but at his death, in 1885, he was insolvent and unable to pay his debts. The contest, therefore, is one between the plaintiff in her own right and the defendants as representatives of the other general creditors. If the plaintiff prevails, she will take all the assets, real and personal, belonging to the

estate. If she fail, the assets remaining will be divided between her and the general creditors in proportion to their respective claims. If no equitable lien was created by the terms of the contract upon the property of which intestate died seized, the plaintiff would certainly acquire no rights superior to those of the general creditors.

Did she acquire an equitable lien by virtue of the contract? If the estate had been solvent no such question could have arisen, because as to the heirs-at-law and next of kin the contract is valid and could be enforced. But as against the general creditors, she must have acquired an equitable lien under the contract to entitle her to priority in payment. Such lien, if existing, must have been created by the contract, because by the seventh and eighth findings of fact it appears that nothing was ever afterwards done to establish or create it. She acquired no lien *in presenti.* The intestate, during his lifetime, was at liberty to sell and convey any or all of his property. The contract so provides. She does not even agree to release her right of dower to the lands of which the husband shall die seized, unless the payment of the annuity shall thereafter be satisfactorily secured. As that has never been done; she is still entitled to dower in his estate. The contract in this and other provisions contemplates that other and further action is to be taken to secure the annuity, which was never done. If the case rested here there would not be an equitable lien. But the contract further says: "And for the payment of said annuity the said party of the first part (the intestate) does hereby promise, covenant and agree, that the same shall be and the same is hereby made and constitutes a lien and charge upon all the property and estate, real and personal of every name and nature, kind and description, which he may own and to which he may be entitled at the time of his decease." This language is very broad and comprehensive, but it does not create an equitable lien on any property. Clearly not *in presenti* upon property then owned by him, because such a construction is repugnant to other provisions, giving him the absolute right of disposition of such property. Can it charge such property as he may have possessed at his death? We are of the opinion that it cannot. The charge or lien must have taken effect, if at all, at the date of the contract, and must plainly designate the property charged. In

the present case that was impossible. The property to be charged was not known to the contracting parties. The intestate may not then have owned it. It was utterly uncertain what property, if any, he would own at his death. The contract could not have been enforced specifically as to such property in his lifetime, because the court could not possibly ascertain the property to be bound by its decree. If the property had been then owned by him and described the equitable lien would have attached. This is conceded by the appellants. But it does not appear that the property owned by the intestate at his death was owned by him twelve years before when this contract was made. It was wholly uncertain whether property owned by him in 1873 would remain his at his death. Between the parties to the contract there was no obligation to retain it. As to such property the intestate owed no duty to the plaintiff. We apprehend this does not constitute that decree of certainty in designating the property to be charged, which the law requires. This conclusion is sustained by *Freemoult* v. *Dedire* (1 Peere Williams R., 429); *Williams* v. *Lucas* (2 Cox's Cas., 160); *Seymour* v. *Railroad Company* (14 How. Pr., 531, 537); *Winslow* v. *Merchants' Insurance Company* (4 Metc., 306); *Otis* v. *Sill* (8 Barb., 102). It is not enough that at some future time the descriptions will become certain. (2 Story's Eq. Jur., § 1249 and note.)

It must not be forgotten that, as against the party himself, his heirs-at-law and those claiming under him voluntarily, such an agreement may raise a trust which will be enforced in equity. But, as to purchasers and others acting in good faith and without notice, a different rule applies. The cases cited by the learned justice at Special Term do not seem to us to justify his decision. In *Payne* v. *Wilson* (74 N. Y., 348) an imperfect mortgage was declared an equitable lien as against a mechanic's lien thereafter filed against the property, because, when filed, it was affected by all outstanding equities then existing. Until the lien was filed the equities of the mechanic were no greater than those of the general creditors. In *Husted* v. *Ingraham* (75 N. Y., 251) an equitable lien for the price of personal property imperfectly secured and in a manner at variance with the contract was enforced against the receiver of the debtors. The receiver stood in the place of the

debtors and took only such title as the debtors possessed. In *Chase* v. *Peck* (21 N. Y., 581) there was an equitable lien upon the specific real estate evidenced by a contract. It was held that the agreement constituted an equitable mortgage upon the land, and that a judgment creditor purchasing the land under execution took subject to the equitable mortgage. In all of these cases the subject of the lien was clear and distinct, and made so by the instruments creating the lien. In no case did the element of uncertainty exist. For these reasons we conclude that no equitable lien was created by the contract by reason of its failure to designate with that certainty, which the law requires the property to be charged therewith.

There are other questions necessarily arising on the facts as found at Special Term, among which may be suggested the following : Should it have been made out that the property owned at his death was owned by him when the contract was made ? If not so owned could it be held that such after acquired property was so far in expectancy as to be capable of being included in or designated by the contract ? Is an instrument, which by the bare force of a contract can have no force or operation until after the death of the party, testamentary in its character where an adequate consideration exists ? Have the general creditors of a deceased person an equitable lien upon the property of the deceased, who was insolvent, equal to that of an equitable lien which takes effect also on the death of the party, the creditors having no notice of its existence ? These and other questions we deem it unnecessary to consider in view of the conclusion reached upon the point first discussed.

The judgment should be reversed, and a new trial granted, costs to abide the event.

HARDIN, P. J., and FOLLETT, J., concurred.

Judgment reversed, and new trial ordered, with costs to abide the event.