## *In re* WILLIAMS' ESTATE.

## (1 Misc. Rep. 35.)

*(Surrogate's Court, Cattaraugus County, Filed September, 1892.)*

1. REAL ESTATE—SALE TO PAY DEBTS.

A petition for sale of real estate to pay debts alleged a large indebtedness of decedent to petitioner, that the only personal property realized by petitioner, as administrator, was $10, and that he had proceeded with reasonable diligence in converting the personal property of decedent into money and applying same to the payment of debts, *held*, that although the petition, as required by section 2752, subd. 4, Code Civ. Pro., did not explicitly state what application had been made of the personal property which came to petitioner's hands, or the amount which might yet be realized therefrom, yet, as the petitioner was the only debtor, and as he could not make payment upon his own claim till it was established, the petition in fact disclosed that the petitioner had made the only legitimate application of the moneys which had come to his hands (viz., to hold same until his claim had been established), and that the amount which might yet be realized therefrom to apply upon his claim when established, was the sum of $10.

2. SAME—CODE CIV. PRO. SEC. 2759, SUBD. 5.

In such a case, the administrator has proceeded with reasonable diligence in converting the personal estate into money, and applying it in the payment of debts and funeral expenses, within the meaning of Code Civ. Pro. sec. 2759, subd. 5, although he did not actually apply the $10 towards the payment of debts.

3. SAME—DISPUTED CLAIM.

In a proceeding for the sale of real estate to pay debts, the court has jurisdiction to determine the validity of any claim, although disputed, even though it be that of the administrator.

4. LEASE—COVENANT TO MAINTAIN LESSOR.

A lease for twelve years contained a covenant by lessees that they would maintain lessor during the term, as payment for the use of the premises. Lessor died prior to the expiration of the term. *Held*, that his maintenance during his life was a full performance of the covenant by the lessees.

5. EQUITABLE MORTGAGE—WHAT CONSTITUTES.

> Decedent having leased his farm, subsequently made an agreement with lessee that latter would build a barn thereon, and that lessor would pay him the reasonable value of same on the expiration of the lease, and in case lessor should die meanwhile, lessee should have a legal claim against lessor's estate for the value of said barn. *Held*, that although lessor had no personal property at the making of such agreement, lessor did not intend to make the value of the barn a lien upon his estate, but merely made an admission of his indebtedness.

6. COVENANT AGAINST CUTTING TIMBER—FIREWOOD AND FENCING.

> Such lease contained a covenant by lessee against cutting timber except for firewood and fencing purposes. Lessee, instead of repairing the fences from timber cut on the farm, sold same, and devoted the entire proceeds to purchasing other material which was used in repairing the fences. Lessee did not sell any more timber than was necessary for such repairs. *Held*, that the covenant was not substantially violated.

Petition to sell real estate for payment of debts. Granted.

C. Z. Lincoln, for petitioner; C. D. Van Aernam and H. R. Curtiss, for contestant.

DAVIE, S.—This is a proceeding for the disposition of decedent's real estate for payment of debts. Lyman Williams died, intestate, April 10, 1885, letters of administration upon his estate were issued to the petitioner March 7, 1892, and the petition in this proceeding was filed on the 12th of the same month. On the return day of the citation the contestants moved for a dismissal of the proceedings, claiming that the petition failed to comply with the requirements of subdivision 4, section 2752, Code Civil Pro., and that it was insufficient to confer jurisdiction. The motion was at that time denied, but is renewed upon the final submission of the case. The section of the Code referred to requires the petition in a proceeding of this kind, when made by an administrator, to state the amount of personal property of decedent which has come into his hands as such administrator, the application thereof, and the amount which may yet be realized therefrom, and it is undoubtedly true that,

if the petition fails to disclose such facts as are required by the. statute to be shown, the surrogate acquires no jurisdiction. *In re* German Bank, 39 Hun, 181. The petition in this case alleges with sufficient accuracy an indebtedness of decedent to the amount of $1,559, and further states that the petitioner has discovered the personal property of decedent to be insufficient to pay his debts, that the amount of personal property of decedent which has come into his hands as such administrator is $10, and that he has proceeded with reasonable diligence in converting the personal property of said decedent into money and applying the same to the payment of debts. The criticism passed upon the petition is that it fails to explicitly state what application has been made of this personal property, or the amount which may yet be realized therefrom. The circumstances of this case, as disclosed by the petition, are somewhat peculiar. The only indebtedness of the decedent is the claim of the petitioner, and he is the administrator. This being the case, the only application he was authorized to make of the moneys belonging to the estate was to hold the same until his claim had been properly established. He was not authorized to make payment upon his own claim until so established. *In re* Gardner, 5 Redf. Sur. 14. So then, the petition does, in fact, disclose that the petitioner has made the only legitimate application of the moneys which have come into his hands, and that the amount which may yet be realized therefrom to apply upon his claim when established is the sum of $10. Aside from this suggestion it would not seem that any application or actual paying out of this $10 is a condition precedent to the right of the petitioner to institute these proceedings. The purpose of the statutory requirement referred to is to prevent a resort to the real estate for payment of debts until it is made to appear that the personal estate, which is the primary fund therefor, is insufficient for that purpose. The law governing proceedings of this kind has undergone various changes. The original statute of 1801 permitted the administrator to institute such proceedings

whenever he discovered or suspected that the personal estate was insufficient to pay the debts. The Revised Statutes of 1830 authorized such proceedings only when it was made to appear that all the personal estate applicable to the payment of debts had been actually applied, leaving no discretion whatever on the part of the surrogate. This statute was amended by the Laws of 1837 so as to restore to the surrogate a discretion in the matter. The amendment provided that the surrogate might, in his discretion, order a disposition of the real estate, although the whole of the personal property of the decedent which had come into the hands of the administrator had not been applied to the payment of debts. The present statute permits such a decree to be made when it appears that the administrator has proceeded with reasonable diligence in converting the personal estate into money and applying it to the payment of debts and funeral expenses, and that it is insufficient for the payment of such debts, leaving it to be determined from the facts of each case as to whether the administrator has used due diligence in this respect or not. Subdivision 5, section 2759, Code Civil Pro. I am of the opinion that the petition in this case, showing a somewhat large indebtedness, a very small amount of personal assets, and a valid reason for not actually applying or paying out the same, discloses due diligence on the part of the administrator, and is in substantial compliance with the requirements of the statute.

As already suggested, the only indebtedness of the deceased is the personal claim of the petitioner, and it is urged by the contestants that the surrogate has no jurisdiction to determine the validity of such a claim, except upon judicial settlement. This suggestion is based upon the provision of the Code that, "upon the judicial settlement of the accounts of an executor or administrator, he may prove any debt owing to him by the decedent." It has been decided that the surrogate has no jurisdiction to entertain a proceeding solely for the purpose of proving such personal claim (*In re* Ryder, 129 N. Y. 640, 29 N. E. Rep.

309); but in proceedings for the sale of real estate, Surrogate Courts have jurisdiction to determine the validity of any claim against the estate, although disputed (*In re* Haxtun, 102 N. Y. 157, 6 N. E. Rep. 111; People v. Westbrook, 61 How. Pr. 138; Kammerrer v. Ziegler, 1 Dem. Sur. 177; Hopkins v. Van Valkenburgh, 16 Hun, 3). The fact that the claim which is sought to be enforced in a proceeding of this kind is that of an administrator does not deprive the Surrogate's Court of the power to determine its validity. The principal controversy in this case arises over the amount and validity of petitioner's personal claim, which arose out of the following facts: On the 10th day of August, 1880, decedent was the owner of a farm of 237 acres, and a considerable quantity of personal property thereon. On that day, by an instrument in writing expressing a nominal consideration, decedent sold all of said personal property to the petitioner and his daughters, Almera A. and Jerusha A. Williams, one-half to the former, and one-quarter to each of the latter. On the same day decedent executed a lease of his farm to the same parties for a term of 12 years from March 1, 1880. This lease contained the following agreement:

"And the said parties of the second part covenant that they will pay to the party of the first part for the use of said premises as follows: That they will board, clothe, take care of, and support the said Lyman Williams on the said premises during said term of twelve years."

The lessees continued to operate said farm together until September 13, 1881, when Almera assigned her interest in said lease and personal property to the said petitioner, and on February 10, 1882, the other sister assigned her entire interest to him. On the 25th day of October, 1881, decedent and petitioner entered into a contract in the following form:

"Whereas, I have let my farm in Mansfield, Catt. Co., N. Y., for the period of twelve years to my son, John Williams, and whereas, a new barn is necessary on said farm for the use of the same, it is therefore agreed between myself and my said son,

John Williams, that he may erect a barn on said premises, and that I will pay him what the same is reasonably worth at the time of the expiration of his said lease, in case he should not in the meantime become the owner of the premises; and in case I should die before the expiration of the said lease he shall have a legal claim against my estate for the reasonable value of said barn.                                    LYMAN WILLIAMS.

"Dated Oct. 25, 1881."

Petitioner constructed said barn in compliance with said contract, and the same was reasonably worth $1,227 at the date of the expiration of said lease. The decedent was supported and maintained on the premises to the time of his death. Petitioner continued to occupy the farm after decedent's death under said lease until the expiration of the term. It is urged on the part of the contestants that, inasmuch as the petitioner occupied the farm from April 10, 1885, the date of the death of the decedent, to the expiration of the term of the lease, March 1, 1892, without paying rent, the fair rental value of the farm during said period, or a sum equal to the support and maintenance of decedent during that time, should be set off in this proceeding against petitioner's claim. Assuming a claim for unpaid rent against the petitioner to be a proper counter-claim, the question arises, does the petitioner owe any sum for the rent of the farm? What was the intent of the parties in making the lease? Was it the design that the care and maintenance of the decedent should operate as a satisfaction of the rent to the time of decedent's death only, or during the entire term in case decedent died prior to the expiration of the term? These are somewhat novel questions, but I am firmly of the opinion that the maintenance of decedent during his life was a full performance of the conditions of the lease on the part of the petitioner. At the time of making the lease, decedent was an aged man residing on said premises with the lessees, and his evident design in making such lease was to give the lessees the use and occupancy

of the premises during the term, securing to himself, however, a suitable provision for support during such part of the term as he might need the same. This was all that decedent expected; it was not anticipated that a money rent was to be paid during any portion of the term. Supposing the decedent, instead of dying on April 10, 1885, had then become, and during the balance of said term remained, a helpless invalid, no one would claim that petitioner could avoid the responsibility of taking care of and supporting him, although such care might be worth many times the rental value of the farm, and petitioner could not have relieved himself from such liability by abandoning the possession of the premises. There can be no equity in holding that it was the intention of the parties that all the probable advantages of this arrangement were to inure to the decedent, and all the disadvantages to the petitioner. If the decedent had voluntarily removed from said premises without the fault of the petitioner, and had not asked for or demanded his support, no claim could have been made against the petitioner upon his covenant in the lease. Pool v. Pool, 1 Hill, 580. It cannot be held that the death of decedent during said term, thereby terminating the necessity for his further maintenance, ended the lease so as to render petitioner liable for the use and occupation of said premises thereafter, or that his death so operated as to change the covenant of the lessees to maintain decedent into an obligation to pay money rent. It must be held that petitioner has fully satisfied all claims against him for the use of the premises during said term.

Contestants further urge that, if petitioner has any valid claim, the amount thereof is made a charge upon decedent's real estate, and that for that reason these proceedings cannot be maintained. This claim is based upon that provision of the Code authorizing a creditor of a decedent, other than a creditor by judgment or mortgage which is a lien upon the decedent's real estate, to institute proceedings of this character. Code Civil Pro. section 2750. The contract under which petitioner's claim

arose provided that, in case decedent should die, petitioner should have a legal claim against his estate; and, in view of the fact that at the time of making such agreement deceased had no personal property, it is asserted that this contract was in the nature of an equitable mortgage on the real estate. While it is true that an equitable mortgage may be constituted by any writing from which the intention to mortgage may be gathered (Payne v. Wilson, 74 N. Y. 348), the statement referred to in the contract for building the barn does not evidence an intent on the part of deceased to make the reasonable value of this barn a lien upon his real estate. The most that can be claimed for such statement is that it is a solemn and formal declaration and admission on the part of the decedent of an indebtedness against the estate.

Again, contestants assert that the evidence discloses a violation of the covenants in said lease on the part of said petitioner against the cutting of timber on said farm. The lease gave petitioner the right of cutting timber for firewood and fencing purposes. It became necessary, from time to time during said term, to rebuild and repair the fences on the farm. The petitioner in some instances, in place of building such fences from the timber on the farm, sold timber therefrom, and with the proceeds of such sale purchased other material for fencing, which was used on the farm, and it does not appear that petitioner disposed of any more timber than was actually necessary to keep said fences in repair; and, so long as he used the entire proceeds of the sale of timber for the purposes of refencing, the contestants have no substantial cause of complaint. The farm at the beginning of the lease was supplied with road line and division fences to some extent. In the operation of said farm it became necessary to rebuild a portion thereof, to remove other portions, and to erect new division fences where none had been before. It is claimed by contestants that petitioner did not leave the fencing in as good condition as when he took possession, but such claim is not supported by the evidence. I fail

to discover, from a careful examination of all the evidence, any substantial breach of any of the covenants of said lease on the part of petitioner.

A decree should be made directing a disposition of the real estate described in the petition, and establishing petitioner's claim to be as above stated, to wit, $1,227 for the building of said barn, and $59 and interest on the same from July 10, 1885, for funeral expenses paid by petitioner.