ATLANTIC TRUST CO. v. HOLDSWORTH et al.

(Supreme Court, Appellate Division, First Department. April 2, 1900.)

**1. CONVEYANCES—MORTGAGES—LIENS.**

    The legal owner of an interest in certain property held in trust for the benefit of another during life, in consideration of a certain sum advanced, executed to a third party an agreement, purporting to be a deed, reciting that she thereby "sold" £900, to be paid out of her interest in the trust estate; reserving a right to repurchase the amount so sold at a rate increasing for three years, after which the purchaser was entitled to the entire £900. *Held*, that the subject-matter being both real and personal, and subject to be converted into cash on the death of the beneficiary, no specific property was conveyed, and the instrument was a mortgage or lien, and, as against other creditors of the maker, was good only for the actual amount advanced.

**2. SAME—PRIORITY.**

    Where the legal owner of a one-fourth interest in real and personal estate reserved in trust for the life of an annuitant conveyed, subject to the annuity and several specified charges, "the one-fourth or other the part or share to which she was entitled," the purchaser took subject to all charges which would have been good as against the owner, though such charges were not all specified.

**8. SAME—EQUITABLE MORTGAGE.**

    Where the legal owner of a one-fourth interest in real and personal estate held in trust for the life of another executed an instrument, styled "Acknowledgment of Debt," reciting that, in consideration of goods furnished the owner, she agreed to give a mortgage on her one-fourth interest in the trust fund, such instrument, though not recorded, nor in the form of a mortgage, was a good equitable mortgage, valid except as against purchasers or lienors without notice.

Appeal from special term, New York county.

Proceedings by the Atlantic Trust Company, as trustee under the will of William Tilden, deceased, against John A. Holdsworth, Frederick Stuart, and others, with Charles Bon and Leoni Bon interpleaded, for the partition of estate held by the trustee, and for the settlement of its accounts. From an interlocutory judgment determining the priority of certain liens against the estate, defendant John A. Holdsworth and defendants Frederick Stuart and others appeal. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Allan McCulloh, for appellants Stuart, Hartland, and Iago.
Charles N. Morgan, for appellants Holdsworth and Braddon.
Frederick R. Coudert, Jr., for respondents Bon.

O'BRIEN, J. The questions presented relate to the validity of certain liens upon a one-fourth interest in a portion of the estate of William Tilden, deceased, who by will gave all his property, consisting of realty and personalty, to his four sons, subject to an annuity to his wife. By an agreement among the legatees, a part of the estate was retained by the executors, from the income of which the annuity was to be paid; and, the testator's widow having died in 1896, this action was brought to partition that part of the estate reserved to meet her annuity. The one-fourth share thereof involved on this appeal is that of the son Milando C. Tilden, who died leaving a widow, Lilian E. F. Tilden, to whom he gave his interest. She subsequently married one Braddon, and, after creating a large number of charges upon her interest in the estate, conveyed it, subject to certain claims designated, to the defendant Holdsworth. The disputed claims may be divided into three classes: First, those of Stuart, Brantford, Thomas G. Hartland, and Iago; second, that of Holdsworth; and, third, the claim of the Bons. The asserted claims of the defendants Stuart, Hartland, and Iago are not assailed in the answers of any of the defendants. As to Holdsworth's claim, a question is presented as to what was the nature of the instrument under which he took title. His theory is that it was an absolute conveyance of all the remaining interests, but the other creditors contend that this instrument was but an assignment of what was left or remained in Mrs. Braddon after the satisfaction of the liens against her undivided interest in the estate. The determination of this question is important, as affecting the third claim, which is a good equitable mortgage, and is enforceable against Mrs. Braddon, but which, because not being in the form of a mortgage or recorded, would not be good, though prior in point of time, as against any subsequent claimant who in good faith advanced money, trusting to her apparent interest in the estate. The claims of the defendants Stuart, Hartland, and Iago arose by virtue of certain instruments given by Lilian E. F. Tilden to them, purporting "to sell" or grant a sum of money, payable out of the estate, in consideration of the advance to her of a specified amount. Stuart's "indenture" is dated February 9, 1892, and recites that:

"The said Lilian Tilden has agreed with the said Frederick Stuart to execute these presents, and to sell to the said Frederick Stuart the sum of nine hundred pounds, to be payable out of the said one-fourth share, in consideration of the sum of three hundred pounds, and subject to such right of repurchase as hereinafter contained: * * * That the said Lilian Tilden may repurchase the said sum of nine hundred pounds at any time during three years from the date of these presents * * * (that is to say, at any time before the expiration of six calendar months from the date of these presents) by payment of the sum of five hundred pounds; * * * between six calendar months * * * and twelve calendar months, * * * on the payment of six hundred pounds; and * * * on payment of an additional sum of one hundred pounds over and above the said sum of six hundred pounds for every period of six months which shall have elapsed before such repurchase shall be effected. And, * * * in case that such sum of nine hundred pounds shall not be repurchased on the terms aforesaid before the expiration of three years, * * * then the said Frederick Stuart shall, in addition to the said sum of nine hundred pounds, be entitled to a further sum; * * * that is to say, the aggregate amount of interest on the sum of nine hundred pounds, calculated from the expiration of three years from the date of these presents, at the rate of five pounds per cent. per annum, with half-yearly rests, by way of compound interest. * * *"

Similarly, the instrument given the defendants Hartland on January 9, 1893, sold to them the sum of £400, to be payable out of the one-fourth share, in consideration of the sum of £100; and that to Iago, dated February 24, 1893, sold him the sum of £350, similarly payable, in consideration of £100. Those deeds, it will be seen, were all given prior to the death of the annuitant, upon whose death they were to become payable out of one-fourth of the sum set aside to provide the annuity. On the trial, David P. Fackler, an actuary, testified that the present worth of the sum of £900 payable on the failure of a life aged 72, such sum of £900 after the expiration of three years to be increased at the rate of 5 per cent. per annum until the failure of the life, computed at 5 per cent., would be £755.28, and on the assumption of 4 per cent., £814.88; that the value of a reversion of £350, under such circumstances, at 5 per cent., would be £263.06, and one of £400 at 5 per cent. would be £281.91, and at 4 per cent., £300.64. The claim of Holdsworth, leaving out of consideration prior instruments, is formally embodied in an instrument dated June 4, 1896, which recited that Lilian E. F. Braddon had agreed for an absolute sale to him of the said one-fourth share of the residuary real and personal estate, subject to the annuity, and subject to the several charges and incumbrances affecting the same specified, and such of them as are valid and subsisting, and, in consideration of £2,000, did grant and assign, as did Herbert C. Braddon, according to his estate and interest, "the one-fourth or other the part or share to which she, the said Lilian E. F. Braddon, is entitled"; that, should the share or interest be vested within 12 months, then she should receive one-half the profits thereof, but, if the possession was delayed longer than that date, £500 was to be deducted for each six-months delay; that, subject to the right of prior mortgages or judgments, all surplus income received after March 26, 1896, during the life of the annuitant, should be equally divided between the parties, Lilian Braddon and John A. Holdsworth. The schedule mentioned includes the liens of Stuart, Hartland, and Iago, stated at the full figures. The claim

of Charles and Leoni Bon is set forth in a written agreement dated December 18, 1891, entitled an "Acknowledgment of Debt." It states that in consideration of dresses and cloaks supplied to Lilian Tilden's account, valued at 13,750 francs, she agreed to give a mortgage upon a vested estate in remainder (namely the one-fourth share) for the amount due, with interest at 6 per cent. from date. The Bons had never filed any notice of this agreement, nor was it known prior to this action.

The questions urged upon this appeal relate to the nature of the instruments given to Iago, Stuart, Hartland, and Holdsworth, the nature of the Bon claim, and their priority, respectively, to payment out of the real and personal property owned by Mrs. Braddon. With respect to those of Iago, Stuart, and Hartland, the referee decided that they were conveyances; but this conclusion was modified by the judge at special term, who held that they constituted only liens or mortgages, and, as against other creditors, were good only for the amount actually advanced, with interest thereon. In this view we concur, because it is difficult to formulate any legal theory upon which these instruments can be sustained as deeds. It must be recalled that the interests which they affected consisted of one-fourth of the real and personal property which, with the other three-fourths of the estate, was in the hands of the executors of William Tilden, deceased, subject to the right of such executors, upon the death of his widow, the annuitant, to turn the real estate into cash, and thereafter to divide the total sum equally among the four sons. By the instruments referred to no specific property was conveyed, the parties taking only an interest which was measured by a certain number of pounds in each instance; and such documents were ineffectual to convey title to any particular property, or grant any interest which could be taken in possession, or which could confer on the owners of the instruments the right to maintain any partition of any particular real estate. Furthermore, as the instruments covered both real and personal property, it is evident that they were not, strictly speaking, deeds. Against the theory of their being mortgages, our attention is called to the fact appearing, that the amounts were not expressly advanced as loans, and that there was no covenant for repayment, and the only recourse which the parties had to obtain repayment was against the interest which Mrs. Braddon had in the Tilden estate. The fact that they were not in form mortgages is not necessarily conclusive as to their character, nor is the further fact that there was no covenant to repay. Under section 139 of the Revised Statutes (1 Rev. St. [Edmond's Ed.] p. 689), which has been embodied in the real property law (Laws 1896, c. 547, § 214), it is provided that:

"A mortgage of real property does not imply a covenant for the payment of the sum intended to be secured; and where such covenant is not expressed in the mortgage, or a bond or other separate instrument to secure such payment, has not been given, the remedies of the mortgagee are confined to the property mentioned in the mortgage."

Having reached the conclusion that the instruments were not deeds, it is unnecessary to decide whether, strictly speaking, they

were mortgages; for whether we consider them such, or only as transfers or assignments of an interest to the extent indicated therein, the determination to be reached as to the rights of the parties under them in the case at bar would be the same.

In regard to the Bon claim, we agree, also, with the learned judge at special term, that:

"As between the debtor and the creditor, the agreement was perfectly enforceable, and created a situation in which equity recognizes that as done which ought to be done. It becomes, therefore, an equitable mortgage. Payne v. Wilson, 74 N. Y. 348; McCaffrey v. Woodlin, 65 N. Y. 459. This equitable mortgage did not need to be filed as a chattel mortgage, for the statute requiring such filing includes only a mortgage upon personalty which is capable of delivery. Bank v. Chaskin, 28 App. Div. 311, 51 N. Y. Supp. 64; Booth v. Kehoe, 71 N. Y. 341; State Trust Co. v. Casino Co., 19 App. Div. 344, 46 N. Y. Supp. 492."

The special term, having thus reached the conclusion that the Bons were equitable mortgagees, and that the instruments to Iago, Stuart, and Hartland, so far as they were unconscionable, could not be enforced against them, properly held that after the payment of the amount actually advanced by these three creditors, with interest, the Bons' claim was next in order of priority.

As between Iago, Stuart, Hartland, and the Bons, on one side, and Holdsworth, on the other, the former were properly held to be prior, for the reason that what Holdsworth contracted and paid for was what was left of Mrs. Braddon's interest after the payment of the claims and charges against it; and, as the special term said:

"The legal theory of those agreements, whether Holdsworth acts under a virtual power of attorney, coupled with an interest, or as an assignee subject to the burdens imposed, is that the prior transfers or liens should be fully paid before any division between himself and Mrs. Braddon, and in no other manner could it be ascertained what the net profits were. Independently, therefore, of other considerations, the Bon claim is superior to that of Holdsworth, and, necessarily so, to any which Mrs. Braddon may urge."

With this conclusion we do not think that Holdsworth has any just cause of complaint, because what he will receive after the payment of the claims against Mrs. Braddon's interest is exactly what he bargained for, and the effect of cutting down the amounts of the claims of Iago, Stuart, and Hartland, or excluding the claim of the Bons, would be to enable him to get, at a less price than he agreed to pay, the property or interest contracted for. In his instrument certain specified outstanding claims and charges were recited, and among them those named, other than the Bon claim, at their full amounts; and as Mrs. Braddon and Holdsworth are not here contesting such claims, and have recognized them at their full amount, we do not see, except upon the theory that Holdsworth shall be allowed to obtain what he purchased for an inadequate price, that he should be paid, without previous payment of such claims in full. And as to the Bon claim the same reasoning applies. Holdsworth agreed to purchase Mrs. Braddon's interest, subject to specific claims and charges, but his real bargain was to purchase from her "the part or share" to which she was entitled of and in the one-fourth interest; and this was necessarily subject to diminution by

all just legal or equitable claims. Holdsworth's instrument, more-over, contained a provision whereby any surplus was agreed to be applied to the payment of outstanding claims which were not spec-ified. Although there was a statement of specified claims and char-ges which did not include the Bon claim, this enumeration was not in its nature exclusive of other claims; for what Holdsworth bought was to be determined from the language of the instrument of trans-fer, which expressly provided, not that he shall take Mrs. Braddon's interest, subject only to the payment of such claims as are spec-ified, but that he·shall receive "the part or share to which she is entitled," which was necessarily what would be left after the pay-ment of all just claims and charges against her interest.

Upon the other questions presented, in view of the opinion of the referee, and that of the special term in modifying the report, it is unnecessary to prolong this discussion; concluding, as we have, that the disposition made by the learned judge at special term fair-ly and equitably determined the rights of the parties.

The interlocutory judgment accordingly should be affirmed, with costs to the respondents Bon as against the appellants. All concur.