No. 28,430.

LEONARD E. BURTON, *Appellant*, v. L. B. BARDWELL, *Appellee.*

(273 Pac. 422.)

Opinion filed January 12, 1929.

*Paul H. Royer,* of Abilene, for the appellant.
*Arthur Hurd,* of Abilene, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Leonard E. Burton is challenging the correctness of a ruling sustaining L. B. Bardwell's demurrer to his petition. The plaintiff alleged that on November 13, 1917, Alvira J. Bardwell entered into a lease contract with the defendant, Bardwell, by which he rented from her a quarter section of land for a period of ten years from January 1, 1918, for which defendant was to pay as rental $200 per year, in semiannual installments of $100, pay the taxes on the land, keep the buildings insured at his own expense, keep the fences and buildings in repair, protect and care for trees

and shrubbery, and keep Alvira J. Bardwell as one of his own family. There was a further stipulation that in case she might require medical service, medicines or nurse, the expense of these was to be paid by her. The defendant did not move upon the farm until January 1, 1918, nor did he contribute anything prior to that time, for the keep or maintenance of Mrs. Bardwell, as she died on the farm on November 15, 1917, about twelve days after the execution of the lease. In her will she provided for the payment of debts, and it is stated that there was sufficient personal property to pay all debts, and all the residue of her property of every kind was devised and bequeathed to the plaintiff, Burton. Defendant entered into the possession of the property on January 1, 1918, and has remained in the possession of the land for the full term of the lease, and has paid $200 each year as cash rental for the farm. It was alleged that in December, 1927, the plaintiff made a demand upon defendant to pay the balance of the rent alleged to be due on the premises under the contract, to wit: an amount equal to the care and keep or board and room of Alvira J. Bardwell, for the period of ten years from January 1, 1918, to January 1, 1928, and that the defendant had refused to pay the same. It is alleged that a fair and reasonable cash rent for the premises described during the period mentioned would be $575 per year; that the reasonable value for keeping said Alvira J. Bardwell as one of the family would be $25 per month, or $300 per year, and that therefore there is justly due to the plaintiff for the ten-year period $3,000 as additional rental for the premises. It is further stated that when the defendant entered into possession of the premises he knew that he could not furnish care and keep for Mrs. Bardwell since he knew that she had died prior to that time, and that the $200 cash rental and the taxes on the premises were not an adequate and just rental for them. The plaintiff therefore prayed for the recovery of the sum of $3,000 with interest thereon from January 1, 1928, at the rate of six per cent per annum. The court held that a cause of action was not stated, and sustained the defendant's demurrer.

It will be observed that while the ten-year lease contained requirements as to the care and cultivation of the farm, and provided for many contingencies, there is nothing in it relating to the possibility of Mrs. Bardwell's death. Can we imply a condition not provided for in the contract and require the lessee to pay as rent a substitute for the personal service he had agreed to render her?

No Kansas case is cited in which the direct question was presented and determined. There is a case (*Wilson v. Highley*, 98 Kan. 154 157 Pac. 411) where plaintiff brought an action against her two brothers to cancel a deed executed by her mother to the brothers in consideration of a promise by the brothers that they would keep and care for the mother and clothe and look after her during her natural life. The deed recited a consideration of $1,000 received by the mother. In addition to cancellation the plaintiff asked that she be deemed to be the owner of a third interest in the land as well as for rents and profits. The contract had been made twenty-two years before the action was brought and she alleged that the brothers had never paid any consideration for the land, nor furnished any care or support for the mother, who died two or three years before the suit was brought. Several objections were urged against plaintiff's petition, including the statute of limitations, which would have barred the mother if she had been alive and had brought the action. Also, that the agreement for keep and care was oral and contradictory of the written instrument, and still another that the agreement was a personal covenant between the mother and her sons and the court held that, "If she had any cause of action against them for the breach of such a covenant, it was a personal one which *died with her.*" (p. 156.) So here, if the services to be rendered by the lessee are personal in their character and by reason of the death of the lessor it became impossible to perform them, performance would be excused. The provision for the care of the lessor as one of the family of the lessee is more of a personal nature than the ordinary one of board and room, and any claim for it would necessarily die with her and would not descend to her heirs or representatives. (*Marvel v. Phillips*, 162 Mass. 399.) See, also, *Browne v. Fairhall*, 213 Mass. 290. The plaintiff could not have required the defendant to accept him or any other person as a member of his family and care for the substitute as a member of the family during the period of the lease. A case quite in point is *In re Shearn's Estate*, 38 Utah, 492, where property was leased for a term of five years at a rental of $1,500 payable in monthly installments. The tenant to pay all water rates, plumbing bills, gas and electric light bills and also that the lessee should keep the lessor during the term of the lease, "with the reasonable comforts of life, including board and room." Installments of cash rent were

paid by the tenant and he cared for the lessor for a few months until his death and thereafter declined to pay anything under the care, board and room provision of the lease. It was held that:

"Covenants for support are almost universally regarded as personal and unassignable without the express consent of the beneficiary." (p. 496.)

And further held that the tenant had the right to discharge the obligation assumed by him in the manner stipulated in the lease and could not be required to provide any substitute performance. It was further stated that if the lessor had elected not to accept the comforts, room and board, and had left the premises he could not have demanded their values, so long as the lessee was ready, able and willing to comply with the obligation to provide for the lessor in accordance with the agreement. That the lessor could not have maintained an action for the money value of the comforts, board and room and no more could the executor maintain such an action. It was further held that the mere fact that the lessor died and can no longer receive the comforts stipulated for did not change the obligation of the lessee in the absence of an express stipulation providing for such an emergency, a stipulation which the courts could not supply. (See, also, *Potts Drug Co. v. Benedict,* 156 Cal. 322; *Jennings v. Lyon,* 39 Wis. 553; *In re Williams' Estate,* 22 N. Y. Supp. 906; 24 Cyc. 1190.)

Here the lessee stood ready to carry out the agreement to maintain the lessor. There was no default on his part. No complaint is made as to his compliance with the other stipulations or the conditions of the executory contract. It must be assumed that he paid the taxes for the ten-year period, that he tilled the farm as required by the lease, that he kept the buildings and fences in good repair and took good care of the fruit and ornamental trees and shrubbery, that he kept up and paid the insurance on the buildings, that he paid the cash rental of $200 per year, and was ready to turn back the farm with all the improvements he had made thereon at the expiration of the term in as good condition as when he entered, except such deterioration as might arise from reasonable use and wear. The obligation performed by the lessee, as will be seen, constituted a large part of the consideration for the use of the land, and since he was able and willing to comply with the personal obligation of keeping the lessor as one of his family, that covenant must be regarded as extinguished by her death. It would have been competent for the

parties to have provided in the contract for such an emergency or of a substitute for the service in the event of her death, but having failed to do so and the lessor's death having made performance of that condition impossible, performance must be regarded as excused. Several conditions and exceptions were anticipated and provided for in the lease. As we have seen, the matter of sickness of the lessor was anticipated and provision therefor was included; that if she needed medicine, medical care or nursing, the expense of these should be paid by the lessor herself. When considering the obligations of. the parties in the event of sickness they could easily have provided what the duties and obligations of the parties should be in case death resulted from the sickness or from other causes. It was stipulated that if waste or removal of improvements were made by the lessee, the lessor might at once reënter and occupy the farm and the lessee was required to pay for all improvements taken from the premises. There was a provision that he would not sublease or assign his lease without the written consent of the lessor, and that such action would entitle the lessor to take possession of the farm. Another provision was that the lessor waived all exemption laws so far as the fulfillment and enforcement of the covenants of the lease were concerned. Still another was that in the last year of the lease, to wit, August 1, 1928, the lessor should have the right to reënter and occupy the farm and to plant all ground to fall wheat not occupied by crops. All of these contingencies were thought of and provided for, but nothing was included as to any alternative for the keeping of the lessor as a member of the lessee's family in the event of the lessor's death. Since the lease did not provide for a substitute for such a personal service, the court cannot supply one. Relating to the question involved it has been said:

"It may be agreed that one may occupy land in consideration of furnishing a home for another. In such a case, so long as the lessee complies with the terms of the agreement, no money judgment can be taken against him; and such care and maintenance of the lessor will operate as a satisfaction of the rent during the entire term of the lease, even though the lessor dies before its expiration. Moreover, the fact that the lessee agrees to furnish the lessor with room and board during the term of the lease, in addition to a specified rental, does not render the lessee liable for an increased amount for the period intermediate the death of the lessor and the end of the term." (36 C. J. 386.)

It is further contended that the contract terminated with the death of the lessor, and that the plaintiff as legatee of the lessor is

entitled to recover the reasonable rental of the premises. Aside from the rule that the performance of the provision for personal service was excused by the impossibility of rendering it, and further that any claim for it did not descend to the heir and legatee, the plaintiff is not in a position to insist that the lease had ended on the death of the lessor. The plaintiff had recognized the existence and binding force of the lease throughout the ten-year period. The lessee had occupied the farm and had paid the rental to the plaintiff during that time. The plaintiff had thus treated the lease as an existing contract and had allowed the lessee to occupy the premises by accepting the rental throughout the term of ten years, and by allowing him to pay the taxes thereon for that time and the insurance on the buildings and keeping the improvements in repair in accordance with the provision of the lease, and in doing so he treated it as a valid existing contract. If the lease was open to the claim of termination by reason of the death, a question it is not necessary to decide, his acts in recognizing its existence for so long a time and taking the benefits arising from the occupation under the lease precludes the plaintiff from asserting that it had terminated or had become invalid. His conduct and course of dealing naturally led the lessee to rely on the existence and validity of the lease during the ten-year term and operated as a waiver of defects in it, if any existed. By collecting the rental under the lease he in fact confirmed it and after ten years of acquiescence and acceptance of the rentals under the lease, he will not be heard to say that the lease was nonexistent or without validity.

The judgment is affirmed.