1839.

PURSER
*v.*
ANDERSON.

---

PURSER *v.* ANDERSON and others.

Although a mortgage may have been paid, yet, on a valuable consideration,
it may be kept alive for other purposes where the rights of creditors and
third persons have not intervened; but, although the mortgagor and mort-
gagee, after payment, may thus resuscitate it as between themselves, yet
an assignment of it, after another mortgage by the same mortgagor is exe-
cuted and recorded, will not override the latter. Nor will it have that
effect as against an assignment for creditors (by the same mortgagee) also
executed and recorded prior to such assignment of the resuscitated mort-
gage. Here is something tantamount to notice and more than a latent
equity.

---

QUESTION as to who was entitled to surplus monies in
court. A reference was had to ascertain priorities. The
surplus had come out of real estate in Henry street, New
York ; and the claimants, on the reference, were George Ra-
pelye and De La Fayette Schanck. The former claimed as
holder and assignee of a bond and mortgage dated the eighth
day of December, 1836, for three thousand dollars, on the
said premises, made by John Anderson to Robert Anderson ;
while the latter claimed as assignee of a bond and mortgage
made by John Anderson and wife to Elisha Conover.

April 25,
1839.

*Mortga-
gor and
Mortga-
gee.
Assign-
ment.
Notice.
Latent
equity.*

On the reference, the testimony was somewhat variant as
to the particular consideration for the bond and mortgage
from John Anderson to Robert Anderson. William Patter-
son deposed, "I have heard John Anderson say that he had
given a mortgage for three thousand dollars to Robert An-
derson on the house John lived in, in Henry street, as secu-
rity for a borrowed note for three thousand dollars. I un-
derstood him it was a joint note drawn by Robert Anderson
and David Anderson senior. I think he used the terms,
'My brother Robert and my uncle David.' This conversa-

tion was either in the latter part of March or the beginning
of April, 1837. He said he had negotiated the said note
on the Seventh Ward Bank. He said, the note had then
been paid, and by him the said John." And the teller of the
bank proved the discounting to and payment by John An-
derson of the note. And it was proved that Robert Ander-
son had admitted that the bond and mortgage to him was
given to secure the endorsement of the note in the Seventh
Ward Bank. John Anderson was examined on the refer-
ence, and appeared to give the idea that this bond and mort-
gage was made to secure money owing to his brother Rob-
ert :—" It was given for money I then owed him ; but I told
him that my note for three thousand dollars should be taken
up when it fell due. He was endorser on said note. I
think the note was given about the same time with the
mortgage." It appeared that on the twenty-second day of
March, 1837, Robert Anderson had assigned this mortgage
(with the bond accompanying the same) for a valuable con-
sideration to George Rapelye. But it was also proved that,
in the month preceding, say on the fifteenth day of April,
1837, the said John Anderson and wife had executed a bond
and mortgage on the same premises to Elisha Conover, for
securing two thousand dollars, to satisfy part of a dishonor-
ed note of John Anderson ; and that the said Elisha Conover
had assigned the bond and mortgage to De La Fayette
Schanck on the seventeenth day of June, 1837. It also ap-
peared that this mortgage and its assignment were both re-
corded before Rapelye took an assignment of the mortgage
from John to Robert Anderson. It also appeared that, on the
seventeenth day of June, 1837, John Anderson had executed
an assignment for the benefit of creditors. This, also, was
recorded before the assignment of mortgage to Rapelye.

The master reported that the mortgage by John to Robert
Anderson was given as a security for a note for $3,000, dated
on or about the nineteenth of December, 1836, drawn by
David Anderson, the uncle of Robert Anderson and John
Anderson, and endorsed by Robert Anderson for the accom-
modation of John Anderson, and discounted by the Seventh
Ward Bank to the credit of John Anderson, and which was
taken up by him on the twenty-second of March 1837, when

it became due, and not for any antecedent debt due from John to Robert Anderson ; and became void on the payment of said note, and remained null and void and was not a lien on the said surplus monies, although the assignee, the said George Rapelye, might have purchased the same for a *bona fide* consideration and without notice of anything to invalidate it.

Exceptions were taken to the report by George Rapelye.

Mr. *Benjamin Haight*, in support of the exceptions.

Mr. *D. M. Cowdrey*, for De La Fayette Schanck.

Mr. *James R. Whiting*, for the assignees of John Anderson.

THE VICE-CHANCELLOR :—The evidence is contradictory as to the consideration of the bond and mortgage between John Anderson and his brother Robert, which the latter assigned to Rapelye, who now claims to receive payment of it out of the surplus money in this court. But I consider the preponderance is decidedly in favor of the supposition that the bond and mortgage were given to secure Robert and their uncle David against the note which they had made, for John's accommodation, to be discounted at the Seventh Ward Bank ; and that, when John paid that note, as it appears he did, the specific purpose for which the bond and mortgage had been given was satisfied.

*Dec.* 27.

After this, however, it was still competent for the parties, John and Robert, to keep the bond and mortgage alive for any other purpose founded on a good or valuable consideration, provided the rights of creditors or third persons did not intervene. It is attempted to be shown that another indebtedness of John to Robert did exist, which served as a consideration, but the evidence falls short of proving the fact in a satisfactory way, either as to the actual indebtedness or the amount for which Robert should hold it as security ; and it could not be held as against John's creditors for the benefit of his family. Upon the whole, therefore, the conclusion must be, that on payment of the note at the bank,

the bond and mortgage were satisfied and became a dead letter in the hands of Robert.

Such being the condition of the bond and mortgage, could it be assigned so as to be of any effect or avail in the hands of the assignee?

With the assent and concurrence of the mortgagor, it could be assigned, and in the hands of an assignee for value it would be available as against the mortgagor and mortgagee. In the present case, the mortgagee has covenanted, in the assignment, that the money mentioned in the mortgage was due upon it; and John Anderson, the mortgagor, appears to have been ready, at all times, to admit the mortgage to be a subsisting security and to concur in the assignment —and Mr. Rapelye having actually paid value for it, I see no difficulty in considering the bond and mortgage as a valid and subsisting security in his hands as against these parties.

But the question is, whether it is so as against third persons who claim adversely to him? Before Rapelye paid his money and took the assignment, John Anderson gave a mortgage to Conover; and, then, assigned his equity of redemption for the benefit of his creditors. When Conover took his mortgage, he understood the preceding mortgage to Robert Anderson was satisfied and no longer an incumbrance, and it was not competent for John and Robert, afterwards, to revive a defunct mortgage to the prejudice of Conover's security. So, after executing the assignment for the benefit of his creditors, it was not competent for John Anderson to defeat the benefit of it to them, by consenting to the setting up of this former incumbrance. The Conover mortgage and the assignment for creditors were both on record anterior to Rapelye's purchase and the payment of his money. He is, therefore, chargeable with notice of them; and if he had inquired of Conover or the assignees, he might have ascertained whether they claimed in opposition to or in subordination of the mortgage he was about to purchase. If they had admitted that they claimed subject to it as a subsisting incumbrance, he would have been safe in becoming the assignee. But if they had objected, as they do now, he could not have made the purchase, except at the risk of being defeated by them. There was enough to put

Rapelye on this inquiry; and it is tantamount to notice to him that they would dispute the validity of the mortgage. He is not, therefore, to be regarded as a *bona fide* purchaser without notice.

The equity set up by the holder of the Conover mortgage and by the assignees, to a preference, is not a latent equity which Rapelye could not know or guard himself against; and he is not entitled to the benefit of the rule on that subject as laid down by the judges in *James* v. *Morey*, 2 Cowen's R. 246.

I am of opinion that the master has reported correctly on the subject of the claims to the surplus; and the exceptions to the report must be overruled, with costs of the exceptions and hearing to be paid by George Rapelye. Each party may be left to bear his own costs of the reference.