CASEY and wife *vs.* BUTTOLPH.

A. purchased a lot, and gave a bond and mortgage for the purchase money. He afterwards gave a quit-claim deed to his son B. (the defendant) of the west half of the lot, the grantee to take possession on the death of A. Afterwards A. gave a similar quit-claim deed to his son C. of the east half. A. paid part of the mortgage, and then died. B. paid the remainder and took an assignment of it, and had been in possession of the whole lot since A.'s death. C. died leaving one child, and a widow (the plaintiff) the mother of the child. The child died, and the mother brought ejectment against B. for the east half of the lot; *Held*, that the mortgage was not merged as to the east half of the lot, and that B. could defend as asssignee of the mortgage.

THIS was an action of ejectment for the east moiety of a lot of land in Warren county. Isaac Buttolph purchased the whole lot of John K. Beekman, 24th September, 1813, and lived upon it till he died, intestate, in November, 1834, leaving a widow, who died in the spring of 1850. On the 16th of March, 1832, Isaac Buttolph and wife conveyed in fee, the west half to his son Bethel, the defendant, to take effect on the death of Isaac. On the 20th June, 1834, he conveyed the east half to his son Elijah Buttolph, 2d, possession also to be given on the death of Isaac. Elijah Buttolph married Betsey, one of the plaintiffs, now Mrs. Casey. He died 14 years ago, and after the death of his father, leaving issue one child. The child died in April, 1851. The widow of Elijah, married Casey, the plaintiff, before the death of the child. Isaac gave Beekman a bond and mortgage for the purchase money, amounting to $403,53, payable in November then following. His deeds to his sons were quit-claim. The sums due on the mortgage were partly paid by the father; and the remainder, at different times, by Bethel; and then he took an assignment. These payments by Bethel, were made under an express understanding with the mortgagee that he was to have an assignment. The bond and mortgage was assigned to him by Beekman's executor, October 6th, 1845. Some of the payments were made to Beekman, and the remainder to his executor. The defendant was a bachelor, and had cultivated all of the farm since his father's death. Before that,

he and his father occupied it together. Elijah did not live on the lot. It was admitted the father paid to Beekman, on the 24th September, 1813, $60,10, and on the 15th January, 1817, $100,50. The defendant was sworn as a witness for the plaintiffs, and testified that his father intended that he or Elijah should pay half of the mortgage

*W. Hay*, for the plaintiffs.

*W. L. F. Warren*, for the defendant.

HAND, J. The plaintiff, Mrs. Casey, claims as the mother of the deceased child and only heir of Elijah Buttolph. (1 *R. S.* 752, § 6. 4 *Kent*, 398.) There is no evidence that the child was ever seised; nor is that now necessary. (1 *R. S.* 751, § 1. *And see* 2 *Id.* 295, § 15.) The deeds to the sons, Bethel and Elijah, postponed the right to the possession until the death of their father, the grantor. It seems, such a deed is valid, under our statute. (1 *R. S.* 724, §§ 24, 10. *Gott* v. *Gott*, 7 *Paige*, 534. *And see Jackson* v. *McKenny*, 3 *Wend.* 233; *Tooley* v. *Dibble*, 2 *Hill*, 641; *Goodell* v. *Pierce*, *Id.* 659.) If the deeds were invalid, the plaintiff could not recover without proving ouster; for the parties would be tenants in common. The deed to Elijah was subsequent to that to the defendant. And if the title had passed before the grantor's death, the east half would, in ordinary cases, first be liable for the payment of the mortgage. It is not necessary to decide whether this rule prevails, where the conveyances are in the nature of advancements. For here, it may be presumed, if parol evidence was admissible on that point, that the defendant was to pay a moiety; for he testified that his father intended he, the defendant, should pay one half of the mortgage, or that Elijah should do it.

But the real question in the case is, whether the defendant can set up his assignment of the mortgage and his possession under it, as a defense at law. An assignment of a mortgage, to one owning the equity of redemption, is a merger of the mortgage; this rule seems inflexible at law. In equity, whether

Casey *v.* Buttolph.

merged or not, is often a question of intent. (*James* v. *Morey*, 2 *Cowen*, 246. *Russell* v. *Austin*, 1 *Paige*, 192. *Millspaugh* v. *McBride*, 7 *Id.* 509. 4 *Kent*, 202. *Schermerhorn* v. *Merrill*, 1 *Barb. S. C. Rep.* 316. *Forbes* v. *Moffat*, 18 *Ves.* 384. *Gardner* v. *Astor*, 3 *John. Ch. Rep.* 53. *Starr* v. *Ellis*, 6 *Id.* 393.) Where the owner of land takes an assignment of a mortgage upon it, it is extinguished unless he has some beneficial interest in keeping the legal and equitable estates distinct. (*Id.*) In this case, if each owner was to pay an equal proportion of the mortgage, it is clear, that there is no merger, certainly in equity, as to a moiety. The east half of the farm is the primary fund to pay one half of so much of the mortgage as remained unpaid by the grantor. And if we can divide the burden of the mortgage in proportion to the land, and as between the parties consider these moieties in the nature of separate liens, there will be no merger at law, as to the east half.

Under these circumstances, I am inclined to the opinion, that there is no merger as to that part; and that the defendant may defend at law as a mortgagee in possession. Only a moiety of an annuity charged upon land was held to be merged, by inheriting a moiety of the land, as heir of the devisee of the grantor of the annuity. (*Jenkins* v. *Van Schaack*, 3 *Paige*, 242.) Where the lessee of land became the purchaser of a moiety of the rent and reversion, the rent and lease were considered as extinguished *pro tanto*. (*Lansing* v. *Pine*, 4 *Paige*, 639.) And an assignment of a mortgage upon several lots, to the owner of part of them, was held to merge it only as to those owned by the assignee. (*Knickerbacker* v. *Boutwell*, 2 *Sandf. Ch. Rep.* 319.) These were cases in equity; and Chancellor Kent seems to have doubted whether the mortgage was not extinguished as to the whole of the premises, by the purchase of the equity of redemption to a part. (*James* v. *Johnson*, 6 *John. Ch. Rep.* 426.) But the members of the court for the correction of errors seem to have had no such doubts. (*James* v. *Morey*, 2 *Cowen*, 246.) The majority of the court, it is evident, thought there was no merger as to that portion of the land not bid off by the mortgagee. *Wiscott's case* was at law, and

was a question of the merger of a particular estate. (2 *Rep.* 60.) And in *James* v. *Morey,* Mr. Justice Sutherland intimated that the bond might be sued for the balance. (*And see* 11 *Vin.* 440 ; *Tyler* v. *Lake,* 4 *Sim.* 351.) At law, estates lying in the same person merge, but they can not do so when they lie in different persons. (*Forbes* v. *Moffat,* 18 *Ves.* 393, *note.*) I think the defendant can defend in this suit as assignee of the mortgage. (*Jackson* v. *Minkler,* 10 *John.* 480. *Phyfe* v. *Riley,* 15 *Wend.* 248.)

[WARREN SPECIAL TERM, October 14, 1851. *Hand,* Justice.]