## ANGEL *vs.* BONER and others.

When a mortgage or judgment has been once paid, and the lien discharged, the parties cannot restore the lien, to the prejudice of third persons who are then incumbrancers.

If the mortgagor can become the absolute owner, in his own right, of the bond and mortgage, the debt will be extinguished and the lien of the mortgage discharged by an unconditional assignment of the mortgage to him; and it is not in the power of the assignor and assignee, by any arrangement they may make, to restore the lien of the mortgage, so that it shall have priority over a junior mortgage.'

W. borrowed money of G. and gave his bond and mortgage to secure the payment of the amount. G. demanding his money, W. procured L. to indorse his note and to raise the money for him, on being secured by the bond and mortgage, which were assigned by G. to L. for that purpose. At the maturity of the note W. applied to B. for the money, upon the security of the same bond and mortgage; informing him there were two other mortgages upon the same premises, one of which was prior and the other subsequent to the one in question. B. agreed to furnish the money, upon the terms proposed. W. then applied to L. to have the mortgage assigned to him (W.) to be by him assigned to B.; and L. accordingly assigned the same to W. to enable him to get the money, by assigning the same to B. W. thereupon assigned the mortgage to B. and obtained the money thereon, with which he paid the note indorsed by L. *Held* that under the circumstances, W. never owned the bond and mortgage, even for an instant, nor did he pay the debt secured thereby. That it was not a case of payment and satisfaction; nor a case for the application of the doctrine of *merger*.

*Held, also,* that W. was merely an assignee in trust; the trust being specified by the parties, though not expressed in the written assignment, viz: that W. should raise money upon the bond and mortgage and therewith pay the note indorsed by L. And that equity would have enforced a performance of the trust.

*Held, further,* that by such assignment of the mortgage to W., the mortgagor, for the purpose above mentioned, the lien and priority thereof was not lost, or postponed to that of a junior mortgage.

APPEAL from a judgment entered upon the report and decision of a referee. The action was to foreclose two mortgages executed by the defendants Woodruff and wife. One, to Oliver Fairchild, dated January 28, 1848, and assigned to the plaintiff, March 15, 1859, upon which, at the date of the report, there was due $1592.61; the other, to Jesse Angel, the plaintiff, dated March 27, 1854; amount

due, at the date of the report, $973.14. Another mortgage was executed by Woodruff and wife to Jesse B. Gibbs, dated March 15, 1851, upon which there was due $1074.47. This mortgage, and the bond, were assigned to the defendant Lee, June 4, 1855, and Lee, on the 4th of October, 1855, assigned them to Woodruff the obligor and mortgagor, December 1, 1855. Each mortgage was given to secure the payment of a bond executed by the defendant, Woodruff. No question arose upon the recording of the mortgages. The defendant Boner claims priority over the mortgage executed by Jesse Angel, dated March 27, 1854. The facts and evidence out of which this claim arises are sufficiently stated in the opinion of the court. The referee rejected the claim, upon the ground that by the assignment of the bond and mortgage, under which Boner claims, to Woodruff, the obligor and mortgagor, the debt was discharged and the mortgage ceased to be a lien, and that their vitality could not be restored by the transfer to Boner.

*F. E. Cornwell,* for the plaintiff.

*Abbott & Wilkinson,* for the defendant Boner.

*By the Court,* MARVIN, P. J. The bond and mortgage in question were given to Gibbs for money borrowed of him by Woodruff. Gibbs wanted his money, and Woodruff made a note for the amount and procured Lee to indorse it and to raise the money; and by agreement with Lee the bond and mortgage were assigned by Gibbs to Lee, to secure him. About the time the note became due, Woodruff negotiated with Boner for the money with which to pay the note, and upon the credit of this bond and mortgage. He informed Boner of the prior and subsequent mortgages. It was arranged that Boner should let Woodruff have the money upon the terms proposed; to wit, the assignment to him of the bond and mortgage. Woodruff communicated this to

Angel *v.* Boner.

Lee. Boner lived in another county. Woodruff inquired of Lee whether it would be right and safe to have the bond and mortgage assigned to him, and then he assign them to Boner, and Lee thought it would be. Lee made the assignment to Woodruff, October 11, 1855, and on the 1st of December, 1855, Woodruff took the bond and mortgage out to Boner, who gave him the money, $800, and he assigned the bond and mortgage to Boner. Woodruff returned with the money, and paid the note. Previous to Lee's assigning the bond and mortgage to Woodruff the latter promised that he would take the mortgage to Boner and get the money for Lee. Lee, as a witness, says that Woodruff told him, before and at the time of the assignment to Woodruff, that he had arranged with some party in Livingston county to let him have the money, on the mortgage. Boner was the man named; there was a conversation about the method to be taken to assign the mortgage to Boner; "this was the way we hit upon to transfer the mortgage to Boner." Does not know that he gave any opinion about the propriety of the way. His intention was to have Woodruff get the money on the mortgage, from Boner.

The referee found that Woodruff, being desirous to obtain money with which to satisfy the claim of Lee under the bond and mortgage, and to obtain further time for the payment of the bond and mortgage, applied to Boner for that purpose, and that it was agreed between them that Boner should advance the money to Woodruff for that purpose, and that the bond and mortgage should be assigned to Boner as his security for the repayment of the money; that Boner advanced the money to Woodruff, and thereupon Woodruff assigned the bond and mortgage to Boner. He also found that when Woodruff took the assignment of the bond and mortgage from Lee, he was the owner in fee of the mortgaged premises, and that he intended to keep the bond and mortgage alive as a lien on the premises, and to use the same for the purpose of raising the money with which to pay Lee;

and that the money received from Boner was paid by Woodruff for the use of Lee.

As a conclusion of law, the referee found that by reason of the assignment of the bond and mortgage to Woodruff, the obligor and mortgagor, the debt, and the lien of the mortgage, became and were satisfied and discharged, as against the interests and lien of the plaintiff in this action. To this conclusion the defendant Boner excepted. The referee directed judgment for the plaintiff for the amount of his two mortgages, and that out of the surplus, if any, Boner's mortgage should be paid; and to this Boner excepted.

The referee has not found, as the evidence clearly shows, that the consideration was paid by Woodruff to Lee, for the assignment of the bond and mortgage by the latter to the former; nor has he found for what purpose and upon what understanding such assignment was made. He has simply found the fact of the assignment, and then the arrangement between Woodruff and Boner, and the assignment by the former to the latter, and that the money which Woodruff received from Boner was by him paid for the use of the defendant Lee.

The learned referee, in his opinion, discusses the doctrine of *merger* (which had been pressed upon him by counsel) as having no application to the case, and then puts his decision upon the ground that "when Woodruff, the debtor, became, as he did in this case, the assignee of the bond debt against himself, the personal action was entirely suspended and therefore gone; and with it went the mortgage lien. The doctrine of non-merger would not help the matter, for it did not apply to this case, and I take it equity does not intend to extend this rule." This extract from the opinion of the referee, and his reference to *Marvin* v. *Vedder*, (5 *Cowen*, 471,) put us in possession of the views of the learned referee; and it seems to me that they are quite too narrow and restricted for the case. I agree that in case Woodruff can

Angel *v.* Boner.

become the absolute owner, in his own right, of the bond and mortgage, the debt was extinguished and the lien of the mortgage was discharged; and that it was not in the power of Woodruff and Boner, by any arrangement they should make, to restore the lien of the mortgage, so that it should have priority over Angel's junior mortgage. Where a mortgage or judgment debt has been once paid, and the lien discharged, the parties cannot restore the lien, to the prejudice of third persons who are then incumbrancers. Such was the case of *Marvin* v. *Vedder.* It was a case of actual payment, as the court held, made by the mortgagor to the mortgagee; and a few days thereafter the money was handed back by the mortgagee to the mortgagor, with an understanding that the time of payment should be extended, and the mortgage security should remain as though the money had not been received by the mortgagee.

The present case, briefly stated, is: Woodruff loaned money of Gibbs and gave his bond and mortgage for the amount. Gibbs wanted his money, and Woodruff procured Lee to indorse his note and to raise the money for him, upon being secured by the bond and mortgage, which was assigned by Gibbs to Lee, for that purpose. About the time the note became due, Woodruff applied to Boner for the money, upon the security of the same bond and mortgage. He informed Boner of the other mortgages, and that one of them was junior to this mortgage. Boner agreed that he would, at a future day, furnish the money, upon the terms proposed; and thereupon Woodruff informed Lee of what could be done with Boner. Lee was then the owner and possessor of the mortgage. Boner resided in another county. Woodruff asked Lee if it would be safe—if it would be all right to have the mortgage assigned to him, Woodruff, and be by him assigned to Boner. Lee thought it would be perfectly right and safe, and he assigned it to Woodruff, to enable him to get the money. Or, in the language of Lee, there

was a conversation about the method to be taken to assign the mortgage to Boner, and it resulted in his assigning it to "Woodruff to assign to Boner. This was the way we hit upon to transfer the mortgage to Boner." Woodruff did procure from Boner the money, and assigned to him the mortgage. Boner had no doubt he was obtaining a valid security. Under these circumstances, can it be claimed that Woodruff ever owned the bond and mortgage? That he ever paid the debt secured by them? Suppose he had not obtained the money from Boner, and Lee had been compelled to pay the note he had indorsed for Woodruff; would not a court of equity have compelled Woodruff to reassign the mortgage to Lee, and would it not have declared the mortgage lien still in force, not only as against Woodruff, but as to Angel's junior mortgage? I think so. Lee understood that Woodruff had no money, and that he must raise it upon the credit of the mortgage. And having confidence in him he made the assignment of the mortgage to him to enable him to raise the money upon it by assigning the same to Boner. Woodruff may be regarded as Lee's agent, in procuring the money. It is true that Woodruff was all the while the principal debtor, and Lee was his surety; but he held the bond and mortgage for his security, and he had no idea of parting with them, except in a manner which should result in his discharge from liability. He did not give up the bond and mortgage to Woodruff and take his personal promise that he would pay the note. Such was not the character of the trust he reposed in Woodruff, but he made "the assignment to Woodruff to assign to Boner," upon Boner's advancing the money to pay the note; and he entrusted Woodruff to do the business.

In my opinion there was no instant of time when Woodruff was the owner of the bond and mortgage. It is not a case of payment or satisfaction. It is not a case for the application of the doctrine of *merger*. Woodruff was assignee

Angel *v.* Boner.

in trust. The trust upon which, or the purpose for which, the assignment was made to him was specified by the parties, though not expressed in the written assignment. Equity would have enforced a performance of the trust. The trust was that Woodruff should raise money upon the bond and mortgage and therewith pay the note indorsed by Lee.

One person delivers money or property to another, to be by the latter paid or delivered to a third person. In such a case the party receiving the money or property holds it upon a trust, and this trust, when not expressed, is implied from the very nature of the transaction, though no express agreement has been entered into to that effect. Such trust, if the beneficiary named has no interest in it, or does not consent to avail himself of it, may be revoked, and then the original trust is gone, and an implied trust results in favor of the party who created the original trust. *(Story's Eq.* § 1196.) Equity will compel the performance of such trust. *(See Story's Eq.* § 1041 *et seq.)*

At common law, a trustee, by appointing his debtor his executor, extinguished the debt, and it could not be revived; but in equity the debt is not extinguished. *(Story's Eq.* § 1209.) At common law, a debt due by an administrator was not extinguished, but it was suspended.

In one of these cases the legal title to the debt was in the executor, (in the absence of a specific legacy,) and in the other, in the administrator. And yet there is no merger, or, in equity, extinguishment of the debt. The title to the debt is held in *autre droit,* and in such a case the doctrine of merger does not apply. *(See Clift* v. *White,* 2 *Kernan,* 519, *and cases cited.)* The executor or administrator could not institute an action against himself, but the party entitled to the surplus of the estate could maintain his suit, in equity.

In my opinion the judgment should be reversed, and there should be a new trial, unless the plaintiff shall stipulate that

the judgment be so amended as to give priority to Boner's mortgage over the plaintiff's junior mortgage.    Costs to abide the event.

[ERIE GENERAL TERM, November 17, 1862.  *Marvin, Davis, Grover* and *Hoyt,* Justices.]