(22 App. Div. 530.)

SHEROW v. YEAMAN et al.

(Supreme Court, Appellate Division, Second Department. November 30, 1897.)

1. MORTGAGES — ASSIGNMENT TO MORTGAGOR — RIGHTS OF SUBSEQUENT MORT-GAGEES.

R. acquired title to certain premises under a decree in partition, and then executed thereon two mortgages for $2,500 each, and one for $9,000. Later the $9,000 mortgage and one of those for $2,500 were held, after mesne assignments, by R. and one C. R. then executed another mortgage of the premises to defendants M. Afterwards all interest in all the first three mortgages were assigned to R. alone, who still held title to the premises. Subsequently the two mortgages for $2,500 were assigned to plaintiff. R. afterwards assigned the $9,000 mortgage to defendant Y. to secure his bond for $6,000, and he and Y. thereafter assigned to defendant H. what was termed the surplus equity in the $9,000 mortgage to secure R.'s bond for $500. All the foregoing instruments were recorded. In an action to foreclose the two $2,500 mortgages, *held*, that when R. acquired the three mortgages, in 1892, the mortgage to defendants M. thereupon became paramount to them, and that their original priority was not reinstated by the subsequent assignments of them by R.

2. SAME—RIGHT TO ASSERT PRIORITY.

Where an owner of real property becomes the assignee of a mortgage previously executed thereon by himself, the fact that an intermediate mortgage given by him was made merely to indemnify the mortgagee therein against a contingent liability as a surety does not prevent the latter from insisting that the mortgagor's acquisition of the prior mortgage has ren-

dered it subordinate to the later one, even though the contingent liability has not accrued, and may never do so.

Appeal from special term, Dutchess county.

Action by Milton T. Sherow against George H. Yeaman, as trustee, and others. A judgment was rendered, from which defendants Edward Moore and Henry C. Moore appeal. In the notice of appeal appellants specify for review an order denying an application to postpone the trial, and an order denying a new trial. Reversed.

The title to the mortgaged premises hereinafter referred to was taken by Robert S. Livingston (a defendant who did not answer) through the execution of a decree in partition on April 10, 1871, when he made three mortgages of that date to Thomas Lawrence, referee,—two of them for $2,500 each, and the other for $9,000. One of the former was assigned by the referee to the chamberlain of the city of New York April 19, 1871; by the city chamberlain to Charles E. Livingston, James C. Livingston, and Robert S. Livingston (the mortgagor), October 18, 1878. James C. Livingston assigned his interest in it to Charles and Robert S. Livingston, November 14, 1878, and Charles assigned his interest to Robert S. Livingston, December 7, 1892. The other $2,500 mortgage was assigned by the referee to Lavinia S. Tapscott, April 19, 1871; by her to Charles E. Livingston, April 13, 1876, who assigned it to Robert S. Livingston (mortgagor), December 7, 1892. Those two mortgages were assigned by Robert S. Livingston to the plaintiff January 5 and March 27, 1893. The $9,000 mortgage was assigned by the referee to the chamberlain of the city of New York, May 24, 1871, and by the city chamberlain to Charles E. Livingston, James C. Livingston, and Robert S. Livingston, October 18, 1878. James C. Livingston assigned his interest in it to Charles E. and Robert S. Livingston, November 14, 1878, and Charles E. Livingston assigned his interest in it to Robert S. Livingston, December 7, 1892; and on July 25, 1893, Robert S. Livingston executed and delivered to the defendant George H. Yeaman, trustee, his bond of that date conditioned for the payment of $6,000 on August 1, 1896, with interest, and as security for the payment of his bond he assigned the $9,000 mortgage to that defendant. Thereafter, in February, 1896, Robert S. Livingston and Yeaman, trustee, joined in an assignment to the defendant Huntington of what was designated as the surplus equity in the $9,000 mortgage to secure the payment to him of the sum of $500 and interest, according to the condition of the bond of Robert S. Livingston to Huntington of the same date. On August 15, 1887, Robert S. Livingston executed and delivered to the defendants Moore a mortgage upon the premises in question and some other land to secure them against all costs, damages, and expenses which they might be compelled to pay by reason of the failure of the mortgagor to fulfill and perform on his part according to the condition of his bond of the same date. All these deeds, mortgages, and assignments were recorded. The legal title to the mortgaged premises remained in Robert S. Livingston. The further facts, so far as deemed essential, appear in the following opinion.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

E. Countryman (F. E. Wadhams, on the brief), for appellants.

George H. Yeaman (Walter C. Hull, J. L. Williams, and Thomas N. Rhinelander, on the brief), for respondents.

BRADLEY, J. The action was brought by the plaintiff for the foreclosure of the two mortgages of $2,500 each. The defendants Yeaman and Huntington availed themselves of the provisions of section 521 of the Code, and sought by their answers the foreclosure in their behalf of the $9,000 mortgage. The defendants Moore answered the alleged causes of action of the plaintiff and of the defendants Yeaman and Huntington, and by their answer alleged payment of the mortgages of which foreclosure is sought, and their

merger as against them in the superior title of Robert S. Livingston, the mortgagor. The trial court determined this issue adversely to the defendants Moore. When the mortgage of date August 15, 1887, was made and delivered by Robert S. Livingston to the defendants Moore, one of his $2,500 mortgages, of date April 10, 1871, made to Thomas Lawrence, referee, was held by Charles E. Livingston, and his other $2,500 mortgage and his $9,000 mortgage of the same date, and made to the same referee, were held by Charles E. Livingston and Robert S. Livingston (the mortgagor). Some time before he made the assignment of the mortgages to the plaintiff and the defendant Yeaman, and in December, 1892, those three mortgages were taken up by the mortgagor, and no interest in them remained in any other person, and thus became united the mortgage interest with the fee in the same person. While that situation remained, the mortgage to the defendants Moore was paramount to them, because he could not, in his own behalf, assert the preference of lien of those mortgages as against that held by those defendants. How, then, could he, to the prejudice of the defendants Moore, give to such mortgages priority by his transfer of them to another? The general rule in equity is that merger will not result from the union of the legal and equitable interests of estate in the same person, contrary to his intent, provided he has the requisite interest for its support, and that, when his interest requires that there be no merger, his intent to that effect may be presumed. For instance, a person taking the legal title to property subject to a mortgage, paying the amount of it, and taking it up, may treat the mortgage as having a continued vitality for his protection against intermediate incumbrances upon the premises. James v. Morey, 2 Cow. 247; De Lisle v. Herbs, 25 Hun, 486; Russell v. Austin, 1 Paige, 192. This right, however, founded on such intention, is so qualified as not to prejudice the intervening rights of third persons. Purser v. Anderson, 4 Edw. Ch. 17; Mead v. York, 6 N. Y. 449.

The fact that assignments were taken by the mortgagor of his mortgages from his associate owner of two of them, and from the owner of the other, indicated his intention to keep them alive for his purposes. His evidence is that his object was to obtain money on the mortgages "without loss of time." It must be assumed that when he obtained the assignment he had discharged his obligation which the mortgages were intended to secure, and that the money he designed to obtain, and which he did subsequently procure, upon the security of the mortgages, was obtained for his own use and benefit. He undoubtedly had the right to assign the mortgages and the bonds accompanying them to secure the payment of money loaned to him, or to secure any new obligation he assumed to the parties taking the assignment of the mortgages. But in practical effect, as to third parties, the mortgages should, by virtue of such assignments, be treated issued by him as of the time the assignments were made to the parties who took them. As he had no interest to protect upon which to support intention to keep the mortgages alive upon payment of them, the assignments to him may have been deemed essential to such intention on his part, if his intention

had any importance, and to give, in form at least, a line of transfer of the mortgages from their inception to the parties who finally took them from the mortgagor. The lien of the mortgages may be deemed to have been inoperative as against the defendants Moore while they were held by him. And, while his assignments were effectual as between the parties, it is not seen that they could have the effect to restore the lien of the mortgages so as to make it paramount to that created by him before then upon the premises. Marvin v. Vedder, 5 Cow. 671; Harbeck v. Vanderbilt, 20 N. Y. 395; Bogert v. Bliss, 148 N. Y. 195, 42 N. E. 582; Purser v. Anderson, 4 Edw. Ch. 17; Lynch v. Pfeiffer, 110 N. Y. 34, 17 N. E. 402; Angel v. Boner, 38 Barb. 425; Hoy v. Bramhall, 19 N. J. Eq. 563. Our attention is called to no case which supports the contention of the learned counsel for the respondents to the contrary of those propositions, although many are cited by them. In Bogert v. Striker, 11 Misc. Rep. 88, 32 N. Y. Supp. 815, the contest was between the person to whom the mortgage was assigned by the mortgagor and the subsequent purchaser from him. No intervening rights of third persons were involved in the controversy. In Champney v. Coope, 32 N. Y. 543, the mortgage was assigned by the mortgagee to the plaintiff's intestate, who advanced the money to a person other than the mortgagor, and took the assignment without notice that the person to whom the money was loaned had any relation to the mortgagor other than the apparent relation of surety. In Smith v. Roberts, 91 N. Y. 470, the mortgagee purchased and took conveyance of an undivided part of the mortgaged premises without payment of any part of the mortgage debt. It was held that the conveyance operated as a release from the mortgage of the portion conveyed, and left the lien of it upon the residue, which the purchaser of such residue, chargeable with notice furnished by the record, took subject to the lien. In Sheldon v. Edwards, 35 N. Y. 279, the question of merger did not necessarily arise. The subject, however, is there referred to, and the general doctrine of merger stated. In Kellogg v. Ames, 41 N. Y. 259, the purchaser of land subject to a mortgage upon it, having advanced to the mortgagee the amount, procured him to execute an assignment in blank of the mortgage. The purchaser afterwards, upon adequate consideration, transferred the mortgage to another, filling his name in the blank assignment, and afterwards conveyed the premises to another, who ineffectually contested the validity of the mortgage. In the prevailing opinion of the court it was said that the subsequent purchaser stepped into the shoes of his grantor, with constructive notice, given by the record of the mortgage, and took only such estate as he could convey; and that he, as well as his grantor, was concluded by estoppel. The case is referred to and distinguished by Judge Andrews in Bogert v. Bliss, 148 N. Y. 200, 42 N. E. 583. In Russell v. Austin, 1 Paige, 192, after the plaintiff, with her husband, had executed and delivered a mortgage, a judgment was recovered against him, and by virtue of an execution the equity of redemption in the mortgaged premises was sold. The husband soon after died, and on the expiration of the 15 months the purchaser received the sheriff's deed, and after-

wards obtained assignment of the mortgage. The question was whether the widow was entitled to dower in the whole estate or in the equity of redemption only. The court held that she was entitled to it in the equity of redemption only. There the purchaser of the land, who was the assignee of the mortgage, had an interest in keeping up the incumbrance for the purpose to which it was applied for his protection pro tanto against the claim for dower. The same question arose, and was in like manner determined, in De Lisle v. Herbs, 25 Hun, 486. In Payne v. Wilson, 74 N. Y. 354, it was said that: "Where the owner of the legal and equitable titles has an interest in keeping those titles distinct,—as where there is an intervening incumbrance,—he has a right so to keep them, and the equitable title will not be merged, and thereby extinguished." And Millspaugh v. McBride, 7 Paige, 509, is to the same effect. The interest of the person in whom the legal and equitable titles are united, which enables him to keep them distinct, is an interest for the protection of his legal title against charges existing when he took it, and subsequent or subject to the equitable title obtained by him. And the intervening incumbrances on account of which he may save the lesser from merger in the superior title or estate are those existing before he acquired the legal title, and do not include any thereafter created by him. The desire of the mortgagor, Livingston, to keep the mortgages alive for the purpose of obtaining another loan of money on them as security was not an interest, in legal contemplation, which enabled him to continue their vitality as against any charge or incumbrances put upon the premises by himself. He, therefore, so far as appears, had no interest which enabled him to create or continue, by his assignment of the mortgages, any lien of them (except as against himself alone), from a time prior to that when he made such assignments. In Casey v. Buttolph, 12 Barb. 639, Mr. Justice Hand, in delivering the opinion of the court, said: "Where the owner of land takes an assignment of a mortgage upon it, it is extinguished unless he has some beneficial interest in keeping the legal and equitable estates distinct." No such interest of the mortgagor, Livingston, is in question in the present case. Merger at law resulted from the assignment of the mortgages to him, and there was no support for intention to continue and save them from merger in equity. In Mead v. York, 6 N. Y. 452, Mr. Justice Shankland, in delivering the opinion of the supreme court, expressed the view that, "as between the mortgagor and mortgagee, it is possible that the courts will allow the parties to keep the mortgage alive by virtue of a subsequent agreement as security for other objects than those contemplated at the time of its creation, but not when the rights of other persons come in collision in any case." The assignees of Livingston took the mortgages with knowledge that he was the mortgagor, and charged with notice that he then had the legal title to the premises, and of the existence of his mortgage to the defendants Moore.

In the view taken it is not important what the situation of those other mortgages was at the time those defendants took the one made to them. They were relieved from the prior lien of those mortgages

48 N.Y.S.—18

by the assignment made of them to the mortgagor. Nothing appears to deny to those defendants the right to assert the lien of their mortgage, and to protect it as paramount to that of the other mortgages in question. It is true that the mortgage was made to the defendants Moore to indemnify them against a contingent liability as sureties. It does not necessarily appear that they will be subjected to any substantial charge in that relation, nor does it appear that they may not eventually be required to pay something on the charge of the liability so incurred. Our attention is called to the consideration had of that question in Livingston v. Moore, 15 App. Div. 15, 44 N. Y. Supp. 125. But it remains undetermined. The existence and purpose of this mortgage are facts found by the trial court. There was not on the trial, and is not here any occasion to inquire into the extent of the liability that the mortgagees have incurred or may incur as such sureties. It is sufficient, for the purposes of this review, that the mortgage is a subsisting lien for their protection or indemnity in that relation.

These views lead to the conclusion that the judgment should be reversed, and a new trial granted; costs to abide the final award of costs. All concur.