KING v. BRIARWOOD LAND CO. OF JAMAICA et al.

(Supreme Court, Special Term, Queens County.   April 7, 1911.)

1. MORTGAGES (§ 268*)—PAYMENT OR PURCHASE.

Equity will not construe a transaction as the purchase of a mortgage, rather than its payment, in order to keep the legal and equitable titles distinct, unless it is necessary to protect the legal title of the person making the payment against charges subsequent, or subject, to his equitable title, and which were not thereafter created by him.

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 268.*]

2. MORTGAGES (§ 319*) — FORECLOSURE — ACTIONS — BURDEN OF PROOF — PAYMENT.

The burden was upon the assignee of a mortgagee, seeking to foreclose, to show that an amount furnished the mortgagor by another for paying the mortgage debt was not a loan, so as to rebut the presumption of payment by such transaction.

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 319.*]

3. MORTGAGES (§ 319*)—FORECLOSURE—PAYMENT—SUFFICIENCY OF EVIDENCE.

Evidence in a suit to foreclose a mortgage *held* to show that a transaction, whereby a half interest in the mortgage was assigned in blank, constituted a payment of the mortgage to that extent, and not its purchase.

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 319.*]

4. ESTOPPEL (§ 78*)—CHANGE OF POSITION.

Where, after the discharge of a mortgage by its assignment in blank, the mortgagor executed an agreement with the person filling in the assignment, acknowledging the latter's ownership of the mortgage and that there were no counterclaims or defenses thereto, and in reliance upon such agreement the parties changed their positions, to their injury, by discontinuing certain suits involving that and other mortgages, etc., the mortgagor is estopped from denying the reissuance of the mortgage, on the ground that no direct consideration passed under such agreement.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 204–210; Dec. Dig. § 78.*]

5. ESTOPPEL (§ 58*)—EQUITABLE ESTOPPEL—CONSIDERATION.

If a consideration be essential to an estoppel agreement, it is sufficient that the person from whom it moves is legally injured by the agreement; a direct consideration or benefit to the other party not being necessary.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 144, 145; Dec. Dig. § 58.*]

6. MORTGAGES (§ 317*)—REISSUANCE.

The owner of the fee could reissue the mortgage after its discharge, or estop itself from denying reissuance, so far as the estate then owned by him, but not to the prejudice of liens attaching prior to the reissuance.

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 317.*]

7. MORTGAGES (§ 317*)—REISSUANCE—CONSIDERATION.

A mere agreement with the mortgagor to extend the time for paying a mortgage theretofore discharged, made by one then having no title thereto, would not constitute a reissuance of the mortgage or estoppel to deny reissuance; the promisor not having parted with anything of value or changed his position to his injury.

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 317.*]

Action by Charles E. King, Jr., against the Briarwood Land Company of Jamaica and others, to foreclose a mortgage.   Decree of dis-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

missal as to a part of defendants, and decree of foreclosure as to the others.

Charles E. Mahoney, for plaintiff.

Edward M. & Paul Grout, for defendant Briarwood Land Co. and others.

Wyckoff, Clarke & Frost, for defendant Wyckoff.

JAYCOX, J.  The making and delivery of the mortgage sought to be foreclosed is admitted, but the answering defendants claim that the mortgage is paid.  The determination of this question depends upon the interpretation to be placed upon the transaction when the one-half interest was assigned in blank by Arthur J. Waldron and Fanny G. Lynch, in which assignment plaintiff's assignor subsequently inserted his own name.  Was that transaction the payment of the mortgage, or the purchase of it?

At that time the Briarwood Land Company was the owner of the premises described in the complaint and other lands.  The plaintiff's assignor, Cornelius D. Curnen, was the secretary and treasurer of the said Briarwood Land Company, in full control thereof.  The defendant David A. Sullivan was largely interested in said land compay, and induced said Curnen to accept his position with the company and promised to finance it.  Sullivan opened an account in the Mechanics' & Traders' Bank in Curnen's name and deposited $25,000 therein.  At the same time Curnen signed and delivered to Sullivan checks payable to cash, covering the full amount of said account.

The mortgage in suit is dated January 2, 1907, payable one year from date.  The mortgagor was the defendant Clark, and the mortgagees Alexander Forman, Jr., Henrietta Hamblin, Fanny G. Lynch, and Arthur J. Waldron.  Each owned a one-quarter interest.  Forman assigned his interest to Hamblin by assignment dated May 10, 1907.  The premises were then subject to a mortgage made by the Briarwood Land Company to Adeline G. O'Brien for $75,000, dated November 18, 1907; also to a mortgage for $141,000 made by the Briarwood Land Company to Thomas F. Martin, dated September 6, 1907.

This was the situation when the mortgage became due on the 2d day of January, 1908.  Waldron insisted that the one-half interest held by him and Fanny G. Lynch be paid.  The Briarwood Land Company had no funds with which to pay it.  Curnen applied to Sullivan, and Sullivan gave back one of the checks drawn to cash, which was destroyed.  Curnen then drew a check to his own order for $5,000 upon the account created by the deposit of Sullivan's funds, as above recited, in the Mechanics' & Traders' Bank.  This check Curnen deposited in the account of the Briarwood Land Company.  Upon that account he then drew checks as follows:  One to Arthur J. Waldron for $2,361.55; one to Smith & Gerard for $2,361.55, for interest of Fanny G. Lynch; one to H. Hamblin for $141.69, for interest upon her one-half interest; also check to order of Smith & Gerard for $70.85, for interest due Fanny G. Lynch upon her one-quarter interest; also check to order of Arthur J. Waldron for $70.85, for interest due on his one-quarter interest.  These checks were delivered to Arthur J. Waldron on the

3d day of January, 1908. Said Waldron at that time issued a receipt for these various checks and delivered it to Curnen. This receipt recites that the check for $2,361.55 to Waldron's order is in payment *of* his one-quarter interest; but I do not consider this material, as in the same receipt it recites that the check for the interest of Fanny G. Lynch is in payment *for* her one-quarter interest.

Curnen testified that Sullivan told him to take an assignment of this mortgage in his own name. A satisfaction of the interests of Waldron and Lynch was first prepared, but at Curnen's request an assignment was prepared in place of it, with the name of Cornelius D. Curnen in it. At the time of the delivery of this assignment, Waldron testified, the name of Curnen was erased at Curnen's request, and the assignment delivered with the name of the assignee in blank. Curnen and Sullivan both testified that at the time of this transaction they were both aware of the mortgages above recited, which were subsequent to the mortgage in suit, and that they knew the effect of the cancellation of such mortgage and the effect of assigning it; and from this the plaintiff apparently desires the court to hold that such assignment was made for the purpose of protecting the estate or interest of some person in the property, but I am unable to see what interest it can be claimed was protected by this assignment.

[1] There is no question but the assignment could have been taken as security for the money advanced by Sullivan; but the testimony does not go far enough to show that this was done. There is a contention that Sullivan, either personally or through a receiver in bankruptcy, claimed some interest in this mortgage; but how or what the exact interest he claimed was is not shown by the testimony. Certainly Curnen then had no interest to protect, and I am equally certain that the Briarwood Land Company had no interest which a court of equity will endeavor to protect by construing this transaction as a purchase rather than the payment of a mortgage. The interest which a court of equity will thus protect has been defined as follows:

"The interest of the person in whom the legal and equitable titles are united, which enables him to keep them distinct, is an interest for the protection of his legal title against charges existing when he took it, and subsequent, or subject, to the equitable title obtained by him. And the intervening incumbrances, on account of which he may save the lesser from merger in the superior title or estate, are those existing before he acquired the legal title, and do not include any thereafter created by him." Sherow v. Livingston, 22 App. Div. 530, at page 535, 48 N. Y. Supp. 269, at page 273.

[2, 3] From the statement of facts above it will appear that the mortgagor (the Briarwood Land Company) had no interest which enabled it to create or continue any lien of this mortgage, except as against itself. The funds to procure the assignment from Waldron having come from the Briarwood Company's account, I think the presumption at once arose that it was a payment of this interest. The funds which Sullivan furnished, and which were drawn from the account in the Mechanics' & Traders' Bank by means of a check drawn by Curnen and deposited to the credit of the Briarwood Land Company must, I think, be considered a loan from Sullivan to that company. The testimony is not very clear as to whether or not Sullivan was credited

with this amount; but I think that the burden would be upon the plaintiff to show that it was not a loan, and that Sullivan was not credited with such an amount upon the books of the Briarwood Company. The amount advanced by Sullivan and the amount necessary to make the payments made by the Briarwood Company to Waldron, I think, were somewhat significant. The amount necessary to acquire this one-half interest was $4,864.80, while the amount at that time advanced by Sullivan was $5,000. This, I think, is a circumstance indicating that the money was loaned. I am therefore of the opinion that this was a payment of the mortgage in suit.

The mortgage having been paid at that time, there would then remain the question as to the power of the Briarwood Land Company, or its successor in title, to reissue it, either by direct reissuance of it by estoppel agreements, by which it is estopped from claiming it is not a valid lien in the hands of the present holder. After the transaction on the 2d of January above recited, the affairs of the Briarwood Land Company apparently did not improve, and later there was a reorganization on the 13th of April, 1908. Prior to this reorganization, and at a meeting held on the 8th of April, an agreement between Mrs. O'Brien and Curnen was entered into, and here for the first time we have a transaction in relation to this mortgage after the 3d of January above referred to. In this agreement it is rceited:

"It is understood that the party of the second part has a participation interest in a certain mortgage for nine thousand four hundred forty-six and 40/100 dollars ($9,446.40), now a lien on certain property of the Briarwood Land Company of Jamaica, said participation interest amounting to the sum of four thousand seven hundred twenty-three and 20/100 dollars ($4,723.20), which is a two-fourths interest, and that said participating interest was acquired by the party of the second part with his own funds, and not out of the funds of the Briarwood Land Company of Jamaica."

It will be seen that Curnen now, for the first time, claims to own the one-half interest in this mortgage, and that he declares that the same was acquired with his own funds.

On the 13th of April the reorganization is completed, and the Briarwood Land Company on that date accepts from Curnen an extension agreement, extending the time of payment of this one-half interest in the mortgage, and by such extension agreement the Briarwood Land Company covenants and agrees to pay the same. This extension is in pursuance of the agreement of the 8th of April. The old officers of the Briarwood Land Company at this time resigned, and others were elected in their places, and Cornelius D. Curnen disposed of his interest in said Briarwood Land Company to Adeline G. O'Brien. In pursuance of the agreement of April 8th Curnen acquired an interest in the $75,000 mortgage, and on this date the premises were turned over to the Consolidated Briarwood Estates. The Consolidated Briarwood Estates made its mortgage for $150,000 to secure a portion of the purchase money to the Briarwood Land Company, which mortgage has subsequently been assigned to the Mechanics' & Traders' Bank, which subsequently changed its name to the Union Bank of Brooklyn. The $75,000 mortgage, to which I have heretofore referred, is now also held by the defendant the Union Bank of Brooklyn.

The defendant Sullivan was, and had been for some time, unable to furnish further funds for this enterprise, and it was in financial difficulties. Various disagreements arose between the parties to this action, and several actions were instituted—one brought by the trustee of Sullivan against Curnen, another by Curnen against Wyckoff, the trustee under the $75,000 mortgage, and another by Wyckoff against Curnen and others in relation to this $75,000 mortgage. When matters were in this condition, a settlement was arranged between Curnen and Sullivan; Curnen acting through his attorney, Michael J. Sweeney, and Herbert J. O'Brien, president of the Consolidated Briarwood Estates, representing Sullivan. This was to endeavor to settle all the matters of difference between them. It involved the settlement of the dispute as to the $75,000, the mortgage in question, interest which had accrued upon the $75,000, moneys due from Sullivan to Curnen, and the necessary agreements and papers to vest the title of this mortgage in Curnen, and the actions above named were to be discontinued. In pursuance of this agreement the Consolidated Briarwood Estates and the Briarwood Land Company each executed and delivered to Curnen an estoppel agreement, reciting that the mortgage in question was held and owned by Curnen and that there was no offsets, counterclaims, or defenses thereto; that Curnen was to part with a valuable consideration upon the assurance of these agreements. The Briarwood Land Company, Sullivan, and Whan each executed and delivered to Cornelius D. Curnen a general release.

[4] It is argued by the attorney for the Union Bank that as to these instruments there was no consideration moving to the Briarwood Land Company or the Consolidated Briarwood Estates; but I do not deem this essential to their validity. The agreements of estoppel and the general releases were all executed as part and parcel of one transaction, and, relying upon them, the different parties thereto parted with valuable considerations and changed their positions to their own detriment. This was done in reliance upon these papers and the parties executing them cannot now come into court and say that no direct consideration passed to them, and that therefore they are not bound thereby. The doctrine of estoppel does not depend upon any consideration for the certificate. Holbrook v. N. J. Zinc Co., 57 N. Y. 616, at page 622; Smyth v. Munroe, 84 N. Y. 354; Conrow v. Little, 115 N. Y. 387, 22 N. E. 346, 5 L. R. A. 693; Meeder v. Provident S. L. Assur. Soc., 171 N. Y. 432, 64 N. E. 167; Continental Nat'l Bank v. Nat'l Bank of Commonwealth, 50 N. Y. 575; Penn. Steel Co. v. Susswein, 132 App. Div. 659, at page 661, 117 N. Y. Supp. 436.

[5] If a consideration be essential to an estoppel, it is not necessary that the consideration move directly from the plaintiff to the defendant, or that the defendant be benefited thereby. It is enough to support any agreement that the person from whom the consideration moves is in a legal sense injured thereby. Rector v. Teed, 120 N. Y. 583, 24 N. E. 1014; Crook v. Scott, 65 App. Div. 139, 72 N. Y. Supp. 516; Hayes v. Mestaniz, 9 Misc. Rep. 705, 29 N. Y. Supp. 1114; Meyers v. Stix, 7 Misc. Rep. 574, 28 N. Y. Supp. 90; Jackson v. Nicol, 23 App. Div. 139, 48 N. Y. Supp. 974.

[6] That the owner of the fee could reissue the mortgage in suit, or by its transactions estop itself from denying the existence and validity thereof, so far as the same affected the fee then held by such owner, I think is clear. Sherow v. Livingston, 22 App. Div. 530, 48 N. Y. Supp. 269; Kellogg v. Ames, 41 N. Y. 259. But under the authorities I think it is equally clear that the lien of such an incumbrance must be limited strictly to the estate then held by the owner. Sherow v. Livingston, supra; Bogert v. Bliss, 148 N. Y. 200, 42 N. E. 582, 51 Am. St. Rep. 684.

The defendants argue that. if the mortgage in question was once paid, it cannot be issued again, and cite numerous cases to support that theory; but I think that a careful reading of them shows that they do not go as far as that. They merely hold that the lien cannot be restored to the prejudice of third parties, and that is the position I take in this case. The defendants the Briarwood Land Company and the Consolidated Briarwood Estates could not issue this mortgage anew, so as to bind subsequent lienors who took their liens subsequent to the date of such reissuance in ignorance of the fact that such mortgage had been reissued. All lienors holding liens subsequent to the mortgage in question, taken prior to the date of such reissuance, would be unaffected thereby. It therefore becomes material to determine the date of the reissuance of this mortgage or the execution of estoppel agreements which were tantamount to such reissuance. This date, in my opinion, was the 19th of August, 1908.        .

[7] The transactions of the 8th and 13th of April do not impress me as constituting a reissuance of the mortgage, or an estoppel upon which the plaintiff's assignor would be entitled to rely. There is a mere extension of the mortgage in question, in which the Briarwood Land Company agrees to pay the mortgage. But for this, it seems to me, the plaintiff's assignor parted with nothing of value, and changed his legal position only as to the time when he could enforce the mortgage. If he had no title to the mortgage, his position was in no way injured by the delay. The agreement, to my mind, seems to indicate that he parted with nothing in exchange for this mortgage. The transaction of the 19th of August, it seems to me, is of a different character. Curnen then surrendered his entire interest in the $75,000 mortgage. He executed the necessary paper to vest in David A. Sullivan title to $5,000 on deposit in the Mechanics' & Traders' Bank. Of course, he may have had no title to this money. He may have had an offset or a counterclaim thereto, and the same may have been involved in some of the actions then discontinued. He also delivered to Sullivan a certified check for $3,200 mentioned in the agreement of August 13th. Under all the circumstances of the case, it seems to me that this was a reissuance of the mortgage, or such a recognition of it by the Consolidated Briarwood Estates as now estops it from denying its validity.

The defendant argues that the plaintiff's assignor could not obtain title by inserting his own name in the assignment, claiming that such an act would be a fraud, and no title would be vested in plaintiff's assignor thereby. I do not think it is necessary to determine that question here. I think by their own acts and dealings in relation to this

mortgage the defendants the Consolidated Briarwood Estates and the Briarwood Land Company have put it out of their power to deny its validity. In other words, conceding that Curnen's possession of this mortgage is wrongful, that by inserting his name in the assignment thereof he obtained no title. I think the defendants the Consolidated Briarwood Estates and the Briarwood Land Company vested him with title therein so far as their property was concerned, and they are now estopped from asserting the invalidity of the title thus vested in Curnen.

The defendants the Union Bank of Brooklyn, Thomas F. Martin, Thomas F. Martin Realty Company, William F. Wyckoff, as trustee, and Adeline G. O'Brien, are entitled to judgment dismissing the complaint as to them. The plaintiff is entitled to a decree of foreclosure and sale as to the others. Such decree should find and decide that the mortgage in suit is subordinate to the liens held by the defendants above named, as to whom the complaint is dismissed.