### PENNSYLVANIA STEEL CO. v. SUSSWEIN.

(Supreme Court, Appellate Division, First Department. June 4, 1909.)

**1. CONTRACTS (§ 214*)—CONSTRUCTION—PAYMENTS.**

Where a contract to construct a dock, and to make the necessary fill inside the crib from an upland, and grade the remainder of the land from a certain avenue to the dock, provided that defendant should pay plaintiff $3,500 on completion of the dock, defendant was liable for that sum when the dock was finished and accepted, though plaintiff had not completed the grading.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 986–988; Dec. Dig. § 214.*]

**2. ESTOPPEL (§ 90*) — EQUITABLE ESTOPPEL — CONTRACTS — ACCEPTANCE OF WORK.**

Plaintiff, having contracted to construct a dock for defendant and do certain filling, employed the J. Company to construct the dock, and, on its completion, notified defendant, and requested him to examine and report if it was satisfactory. Defendant and a dock builder in his behalf examined the dock, and notified plaintiff that he found it "to be satisfactory," whereupon plaintiff paid the J. Company therefor. *Held*, that defendant was estopped from subsequently claiming that the dock was not completed according to contract.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 244; Dec. Dig. § 90.*]

**3. CONTRACTS (§ 295*)—CONSTRUCTION OF DOCKS—SUBSTANTIAL PERFORMANCE.**

Where plaintiff agreed to construct a dock for defendant, and make the necessary fill inside the crib from the upland, and grade the remain-

---

der of the upland from V. avenue to the dock, and at the time suit was brought plaintiff had completed the dock and filled the land designated to an elevation of five feet, five inches above low-water mark, which was about a foot below high-water mark, so that the dock could be continuously used, and defendant's inspector testified that it was fairly well leveled up, the contract was substantially performed.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 295.*]

4. SET-OFF AND COUNTERCLAIM (§ 36*)—ACCRUAL—TIME.

Plaintiff on October 9, 1906, rented certain riparian land from defendant for two years, and, in consideration of the lease, agreed to build for defendant within three months a crib dock on the leased and adjacent premises belonging to defendant, for which defendant agreed to pay $3,500 on completion of the dock, plaintiff further agreeing to make the necessary fill inside the crib from the upland, and grade the remainder of the land from V. avenue to the dock. *Held* that, while plaintiff was bound to build the dock within three months, it had the whole term of its lease within which to do the filling, and hence in an action to recover the contract price prior to the expiration of the lease defendant could not set off damages because of alleged failure to properly construct the fill.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Dec. Dig. § 36.*]

5. CONTRACTS (§ 256*)—MISCONSTRUCTION—ABANDONMENT.

Where a contract requiring plaintiff to construct a dock on leased land provided that plaintiff should also make the necessary fill inside the crib from the upland, and grade the remainder of the land from V. avenue to the dock, plaintiff's claim that the contract only required it to grade the land leased, though unsustainable, did not constitute an abandonment of the contract; plaintiff having more than a year in which to do the additional grading and filling required.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1151; Dec. Dig. § 256.*]

6. CONTRACTS (§ 256*)—ABANDONMENT.

Where a lease of certain riparian land required plaintiff to construct a dock for defendant at a specified price, plaintiff could not abandon the contract without surrendering possession of the land.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1151; Dec. Dig. § 256.*]

Appeal from Trial Term, New York County.

Action by the Pennsylvania Steel Company against Henry M. Susswein. From a judgment for plaintiff, and, from an order denying defendant a new trial, he appeals. Modified and affirmed.

Argued before INGRAHAM, McLAUGHLIN, HOUGHTON, CLARKE, and SCOTT, JJ.

Alton B. Parker, for appellant.

H. Snowden Marshall, for respondent.

McLAUGHLIN, J. On the 9th of October, 1906, the defendant was the owner of a tract of land in Long Island City fronting on the East River and immediately adjacent to land acquired by the city of New York for the so-called Blackwell's Island Bridge, which the plaintiff was constructing. On the date mentioned it entered into an agreement in writing, modified by two supplemental agreements, with the defendant, by which he leased to it for a term of two years a portion of the land owned by him. In consideration of the lease the

plaintiff agreed to build within three months a crib dock upon the premises leased and the adjacent premises belonging to the defendant, according to certain plans and specifications which were annexed to the contract. It was to belong to the defendant, who agreed to pay to the plaintiff $3,500 in cash "upon the completion of said dock." The plaintiff further agreed "to make the necessary fill inside of said crib from the upland and to grade the remainder of said land from Vernon avenue to said dock." This action was commenced on the 13th of June, 1907, the complaint alleging that the plaintiff had duly constructed the dock, and that the defendant had refused to pay the agreed price, for which judgment was demanded. The answer contained certain denials, and alleged as a counterclaim that the plaintiff had not constructed the dock according to the contract in specified particulars, and had failed to grade the land from Vernon avenue to the dock. The jury rendered a verdict in favor of the plaintiff for the amount claimed and against the defendant on his counterclaim. From the judgment entered thereon, and an order denying a motion for a new trial, defendant appeals.

The contract provides in express terms that:

"The said Henry M. Susswein agrees on his part to pay to the Pennsylvania Steel Company in further consideration the sum of thirty-five hundred (3500) dollars in cash upon the completion of said dock."

The defendant, therefore, was obligated to pay to the plaintiff the sum of $3,500 when the dock was completed, irrespective of plaintiff's covenant to do the grading and filling. This was the construction placed upon the agreement by the trial court, and from the instruction to the jury to this effect no exception was taken. The dock was constructed for the plaintiff by the Edward B. Jenks Company, and, before plaintiff paid such company, it requested the defendant to look it over, and see whether or not it was satisfactory. The defendant did so, and thereafter plaintiff wrote him, saying:

"We understand that you and your representative, Mr. Hunt, looked over the dock built by Edward B. Jenks Company at Ravenswood, and that you have agreed to give formal acceptance of this work providing we wrote you, and, in order that our contract with the Jenks Company can be closed as early as possible, we would appreciate a prompt reply."

On the 11th of March the defendant answered the letter, saying, among other things:

"I am in receipt of your favor of the 8th, and in reply desire to advise you that the writer, as well as Mr. Hunt, looked over the crib and we find same to be satisfactory."

Hunt, referred to in this letter, was a dock builder employed by the defendant to see that the work was properly done. The plaintiff, after the receipt of this letter, paid the Jenks Company for constructing the dock. The defendant, having notified the plaintiff that he found the dock "to be satisfactory" and plaintiff having acted on that notification and paid the Jenks Company, could not thereafter be heard to say that the dock was not completed according to contract, and for the reason that, when one asserts the truth of a fact to another and that party acts upon the statement, the party asserting the fact

cannot thereafter be heard to say that what he said was untrue, when the result of such statement would be to the prejudice or injury of the other party. Meeder v. Provident Assur. Society, 171 N. Y. 432, 64 N. E. 167; Payne v. Burnham, 62 N. Y. 69; Hobart v. Verrault, 74 App. Div. 444, 77 N. Y. Supp. 483. Besides, there was sufficient evidence to justify the finding of the jury that the dock was completed according to the contract and the plans and specifications annexed to it.

Defendant's main contention in this respect is that the dock was not completed within the meaning of the contract until the necessary fill behind the crib work had been made, so that the dock could be used. Under the contract itself, I am of the opinion that this contention is not sound; but, assuming that it is, there was sufficient evidence to sustain the finding that at the commencement of this action the fill had been substantially completed. An engineer employed by the plaintiff testified that on June 13, 1907, the land behind the dock had been filled in to an elevation of five feet five inches above low-water mark, which was about a foot above high-water mark. This was apparently enough so that the dock could be used, and it, in fact, was used continuously by the plaintiff. Hunt, who had supervision of the work for the defendant, testified that in June, 1907, "it was fairly well leveled up. * * * I did not see anything the matter so far as the fill was concerned." Irrespective, therefore, of the question that the defendant cannot be heard to say that the dock had not been completed at the time the action was commenced, I am of the opinion that the evidence justifies the finding that it had been, and by reason of that fact the defendant was liable for the $3,500, which he had agreed to pay when the dock was completed. If this conclusion be correct, then it disposes of the defendant's counterclaim so far as it relates to alleged defects in the dock. So far as it relates to plaintiff's alleged failure to do the grading and filling, it seems to me that no right to recover damages had accrued to the defendant at the time the action was commenced. The contract contained separate covenants as to the dock and the grading and filling. The dock had to be completed within three months, but no time was mentioned when the filling and grading was to be done. It therefore follows that the plaintiff might do this work any time before the termination of the lease, which was nearly two years after the completion of the dock, and, until that time, the defendant had no cause of action against the plaintiff because it had not completed the grading and filling. To obviate this difficulty, it is urged that the plaintiff abandoned the contract. It seems that the defendant became dissatisfied with the way in which the grading was being done, and on the 23d of May, 1907, in response to his letters on the subject, the plaintiff by its engineer wrote him:

"We have examined our contract, and find that it only requires us to grade the land leased to us, and said contract has therefore been duly carried out by us."

If I am right about the proper construction to be put upon the contract, then the defendant was correct in saying that the contract had

been "duly carried out by us".; that is, up to that time. It had over a year in which to do whatever grading and filling had not then been done. The statement that the contract did not require the plaintiff to grade any land except that leased to it was not an abandonment of the contract in any sense. It was, at most, but the assertion of what the plaintiff deemed a proper construction of it; besides, it was not the construction which the plaintiff itself had put upon the contract as evidenced by the work which it had done, was then doing, and thereafter continued to do until about the time this action was commenced. Nor do I think the plaintiff could abandon the contract without surrendering possession of the land leased. Upon defendant's failure to pay the $3,500 on completion of the dock, the plaintiff might have abandoned the contract and given up possession of the land without being liable for failure to do the grading and filling, but it did not do so. It remained in possession, and, having done so, it remained obligated to do the grading and filling required by the contract. The contract required the plaintiff to grade not only the land it occupied, but the adjoining strip belonging to the defendant. It states that the dock is to be built upon the leased land and the adjacent premises belonging to the defendant, and plaintiff agreed to make the fill inside the crib "from the upland and to grade the remainder of said land." What the parties evidently had in mind was that all the land behind the dock was to be graded, and the earth which was removed or part of it was to be used to make the fill behind the crib, and this seems to be the construction which the plaintiff adopted before the dispute between the parties arose, and it had until the termination of the lease in which to do this work. It was not bound to have the whole or any part of it completed until it surrendered the premises at the time fixed in the contract, and, until then, defendant had no valid claim for breach of the contract in this respect. The defendant may have a claim for such damage, but it cannot be enforced as a counterclaim in this action, inasmuch as when the action was commenced the plaintiff had over a year in which to do the grading and filling; in other words, the interposition of the counterclaim at this time is premature. At the termination of the lease, if the plaintiff had not performed, then it became liable to the defendant for the damages sustained, and for which he may maintain an action.

Other questions are raised, but it is unnecessary to consider them.

The judgment is therefore modified by striking therefrom the clause determining that the defendant has no cause of action upon his counterclaim, and inserting in place thereof that the counterclaim be dismissed, and the judgment as so modified and the order appealed from are affirmed, with costs to respondent. All concur.